Darrell Wayne ASBRIDGE,
Plaintiff–Respondent,

v.

GENERAL MOTORS CORPORATION,
et al., Defendant–Appellant.

No. 57566.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 4, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Kortenhof & Ely, Joseph M. Kortenhof, St. Louis, for defendant-appellant.

Gray & Ritter, P.C., Geo. L. Fitzsimmons, Wm. B. Quinn, & Stephen B. Woodley, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

This is a products-liability case. Defendant General Motors (GM) appeals judgment for plaintiff. At 7:30 a.m. on October 7, 1980, Darrell Wayne Asbridge sustained serious injuries to his left shoulder and arm when the 1975 GMC step van he was driving rolled over on the driver's side. His arm was caught between the truck and the ground. He alleged the roll-over occurred because defendants GM, Union City Body Company (Union City) and Don Essen Chevrolet Company designed, manufactured and sold a defective truck. In general, the alleged defects were: a high center of gravity and low stability ratio which increased the likelihood the van would roll over in a sharp turn, and a pedestal driver's seat which placed the driver near the lower level of an adjacent window.

Plaintiff submitted against all three defendants with a verdict directing instruction patterned after MAI 25.04. While the jury was deliberating plaintiff settled with Union City. The jury returned a verdict in favor of plaintiff against GM and Union City but in favor of Don Essen Chevrolet Company. The trial court entered judgment against GM after allowing a credit for the amount of plaintiff's settlement with Union City.

GM requested a judgment notwithstanding the verdict in accord with its motion for directed verdict or a new trial. The motion for directed verdict asserted plaintiff failed to prove the step van: (1) was in substantially the same condition at the time of the accident as it was when sold; (2) was used in a manner reasonably anticipated "in that

the seatbelts had been removed, and the safety glass had been replaced with plexiglass"; and (3) was unreasonably dangerous when put to a reasonably anticipated use.

In support of the motion for a new trial or judgment notwithstanding the verdict, GM argued plaintiff's evidence was insufficient to submit a products-liability claim for the following reasons: (1) plaintiff's expert presented no factual or legal basis for conclusions of defect and unreasonably dangerous; (2) plaintiff's expert failed to establish "any cargo carrying vehicle could have the stability roll-over factor he claimed the step van should have had and still be able to carry cargo"; (3) since plaintiff's expert based his opinion on the roll-over stability of a passenger vehicle, his conclusions were not probative of step van roll-over stability; (4) plaintiff's evidence failed to prove causation between the location of the window and plaintiff's injuries; and (5) absence of interior padding was not shown to have caused or contributed to plaintiff's injuries.

The following issues were raised in a motion for new trial and on appeal:

2. The court erred in refusing to allow into evidence the plaintiff's medical history as given to his treating doctor to the effect that he apparently fell asleep at the time of the accident, all as set forth in this defendant's offer of proof at the time when the court failed to allow such evidence.

3. The court erred in failing to give this defendant's instruction No. A withdrawing the issue of insufficient interior padding from the jury's consideration because:

(a) There was no causal relationship between the lack of interior padding and plaintiff's injury and there was no evidence showing any relationship whatever between the lack of interior padding and plaintiff's injury.

(b) The evidence, instead, affirmatively showed that plaintiff's arm was injured because he was thrown against the plexiglass and either injured it in that encounter or between the frame of the vehicle and the ground when the vehicle overturned.

(c) Because of the generality of plaintiff's verdict director, i.e., that the vehicle was in a "defective condition unreasonably dangerous", the court should have removed the padding issue from jury consideration because otherwise, the jury could have found against this defendant if the jury believed there was insufficient dashboard padding when such had nothing to do with plaintiff's damages.

(d) Witness Noetl [sic] testified flatly that the lack of interior padding was a design defect but did not testify that that caused or contributed to cause plaintiff's injuries.

\* \* \* \* \* \*

6. The trial court erred in submitting Instruction No. 6 for the reason that there was no evidentiary support for the submission that the van was in a defective condition unreasonably dangerous when put to a reasonably anticipated use, nor was there evidentiary support for the submission that the step van was being used in a manner reasonably anticipated when in fact the safety tempered glass on the left side had been removed and replaced with quarter inch plastic and the seatbelts had been removed.

The court denied GM's motion for judgment notwithstanding the verdict or a new trial. On appeal GM presents one claim for reversal and three for a new trial. In the claim for reversal, GM contends it is entitled to judgment because plaintiff failed to make a submissible case. GM argues plaintiff "failed to establish with substantial evidence that the step van was defective and unreasonably dangerous, that the alleged defect caused or contributed to cause his injuries and that the step van was used in a reasonably anticipated manner."

■ To prevail under the doctrine of strict liability in tort, plaintiff must prove the product was defective and dangerous when put to a reasonable use anticipated by the manufacturer, and the plaintiff sustained damage as a direct result of the defect. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607 (Mo. banc 1977). *See,*

*Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362 (Mo.1969). On appeal we view the evidence in the light most favorable to the verdict, with all reasonable inferences to be drawn therefrom, and will disregard defendant's evidence unless it aids the plaintiff's case. *Winters v. Sears, Roebuck & Co.,* 554 S.W.2d 565, 569–570 (Mo.App.1977).

To prove defect at the time of manufacture and sale plaintiff offered the testimony of John Noettl. Mr. Noettl's qualifications as an engineer were not contested. Mr. Noettl viewed the accident scene which he described for the jury as a typical city street. The roll-over occurred when plaintiff swerved to the right to avoid a collision with a vehicle coming into his lane of traffic. The step van went over a curb and rolled over landing on the left side.

Plaintiff made a submissible case on all elements of products-liability. Mr. Noettl testified the stability of the step van could be derived from tests of motor vehicles other than step vans. According to Mr. Noettl:

> The ... test ... applies to all vehicles because the primary factors that determine whether a vehicle is stable in turns or not, is the relationship of the center of gravity of the vehicle and the track width of the vehicle. The track width is a distance between the center tires on one side of the vehicle to the center of the tires on the other side of the vehicle ... [Y]ou have a center of gravity which is a point on a vehicle that the concentration of the weight is determined to be in order to perform calculations on stability of vehicles and also it's the determining factor on the momentum, the leverage that happens on a vehicle in turns.
>
> \* \* \* \* \* \*
>
> [T]he same principles apply to all motor vehicles to determine the effect of the vehicle in turns. It's the same thing as saying if you build something too high and narrow it's going to fall over too easily and the CG [center of gravity] was

measured at 39 inches, half the track width, half of 66 is 33 inches, ... The CG gives you a number and that number represents the amount of force it would take to push the vehicle over if it was just sitting there, not moving, just sitting there. So, if you would take say half of the track width which is 33 inches, 33 and divide that by the height of the CG which was 39 inches, you come out with about .84 thousands, that .84 simply is a number that is a percentage of the weight of the vehicle. In other words, if the vehicle was 5,000 pounds it would take a little over 4,000 pounds just sitting there to push it over, just sitting.

Noettl opined, without objection, the design of the pedestal seat was defective and unreasonably dangerous.

> The opinion is that this is designed defectively from a safety standpoint for a couple of reasons. First of all, you have the center of gravity of the seat and the occupant that sits on the seat above the center of gravity of the vehicle. In passenger cars you sit at or below the center of gravity but what that does when the vehicle starts to go into a roll is it multiplies the slinging effect of the person sitting on the seat and multiplies it by a lot.
>
> \* \* \* \* \* \*
>
> [It] is multiplied because he is sitting at the end of a sling-like if he is up here, the CG [center of gravity] is here and it's the same principle of a slingshot, so you sling and the object sitting up here goes off with a lot more force. Exactly what happens when you design a seating system in a vehicle and put it significantly higher than the CG of the vehicle. In addition to that, it's my opinion that the seat is defectively designed because it has no curvature to it into the body support mechanism, no arms to it to attenuate the forces and reduce the lateral force or cushion them in a turn.

Noettl also testified, without objection, the design of the window was unreasonably dangerous for a driver in a roll-over.[1]

1. The window was placed in the door and was approximately seven and one half inches to the left of the operator sitting on the pedestal seat.

[T]hat's a very dangerous situation because essentially you are creating an area here where the upper part of the body and possibly your whole body could very easily exit that area ... [T]his combination of a very high seat, a large exit porthole, and vehicle susceptible to roll-over, is a very poor design from a safety standpoint.

GM also contends plaintiff failed to make a submissible case because after sale in 1975 and before the accident in 1980, two changes were made; lap seatbelts were removed and the safety glass window was replaced with a plexiglass cover. GM reasons if the changes were causal to the injuries then plaintiff cannot submit on products-liability. If this premise relied on by GM is supported by the evidence then the court erred in not granting a directed verdict or judgment notwithstanding the verdict. However, whether the changes caused the accident or the injuries, or exaggerated either of them are questions of fact. Restatement (Second) of Torts § 402A (1965), adopted in *Keener v. Dayton Electric Mfg.*, 445 S.W.2d 362 (Mo. 1969), requires proof of defect at the time of sale and use of the product as reasonably anticipated. It also requires the product be in substantially the same condition as when it was delivered to the purchaser. *Winters v. Sears, Roebuck & Co.*, 554 S.W.2d 565, 572 (Mo.App.1977). A seller is not "liable for injuries which are proximately caused by a defect in the product created by alteration of the product by the user or a third person." *Id.* at 572. However, plaintiff can make a submissible case where there is evidence alterations are not the proximate cause of the damages incurred. *Id.* at 573.

Noettl testified, again without objection, the safety glass in the window would not have held plaintiff in the passenger compartment of the vehicle. In his opinion, the impact of plaintiff's body being thrown into the window "would have shattered anything up there that was not sheet metal." Noettl also testified the presence of a lap seatbelt, removed between the time of manufacture and the accident, "would have done little or no good in this type of roll-over." Noettl asserted the design of the window in conjunction with the seat was unreasonably dangerous for the driver in a roll-over.

The trial court did not err in refusing to grant a directed verdict or judgment notwithstanding the verdict. Plaintiff made a submissible case on all essential elements. The testimony of Mr. Noettl was sufficient to support a finding of defects which made the van unreasonably dangerous. The step van was used as designed and manufactured, as a road vehicle. Mr. Noettl's testimony established the alterations were not the proximate cause of plaintiff's injuries. The jury was free to believe the opinions of plaintiff's expert on defect, unreasonable danger and causation.

■ GM sets forth three arguments to support the granting of a new trial. GM first contends the court erred in excluding from evidence a notation in the office records of plaintiff's surgeon, Dr. Sedgwick. The notation reads, "He apparently fell asleep at the wheel." Dr. Sedgwick dictated the notation either the day of the accident in October, 1980 or within the week. This case was tried in September, 1989. GM contends the entry is admissible as part of a business record. The trial court sustained plaintiff's objection on the grounds the statement was highly prejudicial and its source not definable.

During Dr. Sedgwick's deposition, he was questioned about the source of the notation. He thought it must be a conclusion he reached after speaking with plaintiff before entry into the operating room. His use of the word "apparently" made him think it was a conclusion he drew as opposed to a statement made by his patient. He could not recall what plaintiff said to him outside the operating room.

It is well recognized an entry in a medical record made for the purpose of diagnosis and treatment is admissible unless subject to a specific objection such as irrelevancy or an inadequate source of informa-

---

The window constituted a very large exit located below the upper shoulder and elbow.

tion. *Allen v. St. Louis Pub. Serv. Co.,* 365 Mo. 677, 285 S.W.2d 663, 666 (1956). Our supreme court in *Breeding v. Dodson Trailer Repair Inc.,* 679 S.W.2d 281, 285 (Mo. banc 1984) stated a patient's remark noted in a medical record may be an adequate source of information.

For two reasons we find no error in excluding the notation of Dr. Sedgwick. First, he did not and could not testify the statement was made by plaintiff. All parts of a medical record are not admissible under the Uniform Business Records as Evidence Act. Section 490.680 RSMo 1986. Objectionable parts may be excluded if a proper, specific objection is made. *Boland v. Jando,* 395 S.W.2d 206, 207 (Mo.1965). Plaintiff objected on the ground the statement was not admissible because there was no evidence plaintiff made the statement. Accordingly, there was no foundation for attributing the statement to plaintiff merely because it was entered in the medical record.

Second, in form the statement is indefinite and conclusory. It is not a statement of fact regarding medical history or pertinent to diagnosis and treatment of plaintiff's arm injuries. We find the court did not abuse its wide discretion in determining the source of the information was not proven. The testimony of Dr. Sedgwick did not constitute a proper foundation for admission as a business record. *Beggs v. Universal C.I.T. Corp.,* 409 S.W.2d 719, 723 (Mo.1966); *Stewart v. Sioux City & New Orleans Barge Lines Inc.,* 431 S.W.2d 205, 211 (Mo.App.1968).

▪ GM's second argument for a new trial is the court erred in refusing to give a withdrawal instruction on the issue of the absence of interior padding. The court refused to instruct the jury, "The issue of whether there was sufficient interior padding, is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

Plaintiff submitted against each of the three defendants by use of a verdict directing instruction patterned after MAI 25.04.

The step van was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, the step van was used in a manner reasonably anticipated, and ... plaintiff was damaged as a direct result of the defective condition as existed when the step van was sold.

The jury was permitted to find a verdict for plaintiff and against GM if it believed GM sold the step van in the course of its business.

GM argues the general submission, "in a defective condition unreasonably dangerous", allowed the jury to find liability by evidence of the absence of interior padding. A padding defect was not pleaded in the petition. However, it was mentioned by two witnesses, Mr. Aldelsburger, Senior Vice-President of Union City, and Mr. Noettl. Neither testified the absence of padding caused or contributed to the rollover, or the injuries claimed by plaintiff. Accordingly, GM contends the evidence of the absence of padding constituted a false issue which may have been considered by the jury when determining defect. There was no evidence from which the jury could find any relationship between the absence of padding and plaintiff's injuries. Plaintiff's injuries occurred either when he was thrown against the plexiglass or when his left arm was between the frame of the vehicle and the ground.

GM does not complain MAI 25.04 was defective as being too general. Rather, it argues because it is general any evidence of defect not causal to casualty or injury should be withdrawn on request in a products-liability submission.

Giving or refusing a withdrawal instruction is a matter of discretion of the trial court only reviewable for abuse. *Ponte v. Harley Davidson Motor Co.,* 732 S.W.2d 561, 563 (Mo.App.1987). Such instructions should be given when there is evidence which might mislead the jury in its consideration of the case as pleaded and submitted. *Sampson v. Missouri Pacific R.R. Co.,* 560 S.W.2d 573, 584 (Mo. banc 1978).

The aggregate testimony of the two witnesses was very brief. No reference was made to padding or the absence of padding

during closing arguments. No objection was made on grounds of relevancy.[2] It would not have been error to submit the requested withdrawal instruction because of the brevity of the testimony. However, it does not follow refusal of the instruction was error requiring a new trial. The verdict directing instruction required the jury to find plaintiff's damages "a direct result of such defective condition." Since there was no evidence of causation from absence of padding, and we presume the jury followed instructions, we find no abuse of discretion in refusing the withdrawal instruction.

GM's final argument for a new trial is the court erred in not informing the jury Union City settled with plaintiff during jury deliberation. GM argues it should be released of one half the liability. GM asserts the court's judgment of a full verdict minus the settlement amount was inconsistent by finding joint liability and a misapplication of the law. This allegation of error was not preserved for appellate review because it was not presented to the trial court before the jury was discharged. *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986). Furthermore, the allegation of error regarding the amount of the reduction of the Union City settlement was not preserved for appellate review because it was not presented to the trial court in a motion for a new trial. Rule 78.07; *Fahy v. Dresser Indus., Inc.,* 740 S.W.2d 635, 644 (Mo. banc 1987). Even if this alleged error was preserved for appellate review, this point is without merit.

■ GM argues the jury would have returned a different verdict had the jury known of the settlement. There is no way to confirm the validity of this contention. We presume the jury followed the court's instructions. The jury was instructed to award plaintiff fair and just compensation for any sustained and future damages as a direct result of the accident. There was no claim made in the trial court and no argument has been made here the amount of

the award was not supported by the evidence. Under these circumstances we find no error in subtracting the amount of the settlement from the amount of the verdict and entering judgment against GM as the surviving defendant.

There is no legal support for the suggestion of GM the award against it should be one half of the amount of the verdict or one half of the verdict less the amount of the settlement with Union City. The liability of all defendants was joint and several. *Jensen v. ARA Serv., Inc.,* 736 S.W.2d 374, 378 (Mo. banc 1987). Settlement agreements tend to be highly prejudicial and should be kept from the jury unless there is a clear and cogent reason for admitting a particular settlement agreement. *Hackman v. Dandamudi,* 733 S.W.2d 452, 456 (Mo.App.1986). GM is entitled to a credit for the amount of the settlement and no more.

PUDLOWSKI, P.J., and CRANDALL, J., concur.

---

**2.** Lack of padding not objected to on grounds such defect was not pleaded in plaintiff's peti-    tion.