**Richard W. SANDERS and Rowena Fay Sanders, Plaintiffs–Respondents,**

v.

**David WALLACE and Massey–Ferguson, Inc., Defendants–Appellants.**

**Nos. 58156, 58157.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 23, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Thomas R. Larson, Kansas City, Robert C. Ely, Samuel T. Vandover, St. Louis, Diane M. Beers, Roy Larson, Kansas City, for defendants-appellants.

Robert M. Ramshur, Piedmont, for plaintiffs-respondents.

STEPHAN, Judge.

Plaintiffs brought this action for product liability and negligence against Massey–Ferguson, Inc. and David Wallace. Richard Sanders was injured on a tractor, manufactured by Massey–Ferguson and owned by Wallace, on July 29, 1985. He sought damages for his injuries and his wife sought damages for loss of consortium. The jury found for plaintiffs and awarded a total of $2,250,000.00. The defendants filed separate appeals which were consolidated by this court.

The tractor was manufactured by Massey–Ferguson in 1972, and was purchased by Wallace, in used condition, in 1981 or 1982. The tractor had hydraulic brakes on its rear wheels. Each rear wheel had a separate brake pedal which allowed the operator to apply brakes to either wheel giving the operator greater maneuverability. The individual brake pedals could also be depressed simultaneously to allow the operator to stop the tractor in a straight line. If an operator, travelling at a speed of 10–12 m.p.h., applied both brakes simultaneously but inadvertently released one pedal, the braking system was supposed to release hydraulic pressure to equalize the

brakes and prevent the tractor from spinning or overturning. To restore braking in this situation, it was necessary for the operator to completely remove his foot from the brake pedals and then reapply the brakes. An integral part of the braking system was a device called an accumulator. It stored hydraulic pressure so that the operator could retain some braking power if the engine died. The accumulator was required to be filled with compressed nitrogen; it could then provide braking for two to four pedal applications. Wallace's tractor did not have an accumulator; there was a homemade looking device in its place. The tractor would, however, operate properly when the accumulator was not in place. The first time an operator would notice its absence was when the brakes failed after the engine stalled. The tractor, as manufactured, was also not equipped with a manual safety or emergency brake.

The tractor had an automatic hydraulic transmission which had a park lock. The park lock, comparable to the park gear on an automobile, was designed to hold the tractor in a stationary position. It could not be used to stop the tractor if it was moving.

On July 29, 1985, Richard Sanders was working for Wallace moving bales of hay with the tractor. Late in the day, he stopped to speak with his wife. Rowena Sanders testified that Richard was seated on the tractor and the tractor was running. Both of his feet were holding down pedals; his left foot was on the clutch and his right foot held the brakes. The tractor began to move forward down the slight grade on which it was sitting. Rowena Sanders testified that her husband was frantically grabbing at the controls as if in a panic. She could not say if the engine was running, but she could hear the gravel crunching under the tires. The tractor failed to make a turn at the bottom of the grade and went over a bluff.

Richard Sanders fractured his skull in two places. He also suffered a crushing injury to his pelvis, left tibia, left knee and left femur. He was unconscious for a time

and has some residual brain damage. He is functionally blind in his left eye. There is a blockage of blood flow in his left leg which has resulted in permanent exposure to the threat of serious infections. His left knee has been repaired with metal pins and plates, but this is a temporary measure. He will require a total knee replacement which must then be redone every five or ten years.

Plaintiffs' expert testified that the tractor was unreasonably dangerous when it was designed and manufactured due to the lack of a functional manual parking or emergency brake. His opinion was that the tractor was unreasonably dangerous in design, but it was even more dangerous with the accumulator absent.

There was testimony that the tractor lost braking power on three prior occasions. Wallace instructed his employees to put the gearshift in the park position when stopping for the purpose of getting off. Wallace had, at one time, been a Massey–Ferguson tractor dealer and had personally owned between twenty-five and thirty Massey–Ferguson tractors. He testified that this tractor did not have an accumulator when he bought it and that he did not know what an accumulator was prior to trial. The jury was instructed on the theories of strict liability as to Massey–Ferguson, negligence as to Wallace and comparative fault as to Richard Sanders. The jury found for plaintiffs and awarded $2,000,000.00 to Richard Sanders for his personal injury claim and $250,000.00 to Rowena Sanders on her claim for loss of consortium. The jury determined fault as follows: Massey–Ferguson, 60%; Wallace, 40%; and Richard Sanders, 0%. We affirm.

As stated, the defendants filed separate appeals. We will review the arguments raised by Massey–Ferguson first and then the points raised by Wallace.

## MASSEY–FERGUSON'S APPEAL

In its first point, Massey–Ferguson asserts that the trial court erred in denying its motion for directed verdict at the close of all the evidence because the evidence failed to establish that the tractor reached

Richard Sanders without substantial change in its condition. The argument is based on the fact that the accumulator had been removed from the tractor sometime after it left the factory.

■ Plaintiffs' claim against Massey–Ferguson is based on strict liability. To prevail under this doctrine, plaintiffs must prove the product was dangerous and defective when put to a reasonable use anticipated by the manufacturer and that they sustained damage as a direct result of the defect. *Asbridge v. General Motors Corp.*, 797 S.W.2d 775, 777 (Mo.App.1990). On appeal, we view the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict, disregarding all of defendants' evidence unless it aids plaintiffs' case. *Id.* at 778. In order to recover, plaintiffs must establish each of the following: 1) Massey–Ferguson sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a reasonably anticipated manner; and 4) plaintiffs were damaged as a direct result of such defective condition as existed when the product was sold. *McDowell v. Kawasaki Motors Corp. USA*, 799 S.W.2d 854, 865 (Mo.App.1990).

Plaintiffs presented the testimony of an expert, Mr. Sevart. He testified that the tractor was unreasonably dangerous when manufactured because it lacked a functioning manual safety brake, separate and apart from the tractor's hydraulic braking system. He stated that the tractor was unreasonably dangerous regardless of whether the accumulator was present and functioning or, present and not functioning. Finally, he added that the tractor, while defectively and dangerously designed, was rendered even more dangerous in the absence of an accumulator.

Massey–Ferguson's argument seems to suggest that it is being held liable because the accumulator was removed. This is not so. Liability was premised on the jury determination that Massey–Ferguson failed to design a braking system with a manual back-up and that such equipment, if designed, would have prevented plaintiffs' injuries. It was for the jury to decide the weight and credibility to accord the expert testimony. *McDowell*, 799 S.W.2d at 865.

■ This leads us to Massey–Ferguson's second point—that the proximate cause of plaintiffs' injuries was left to speculation and conjecture. Massey–Ferguson argues that there was no proof of why the tractor started to roll, the condition of the tractor at the time it started to roll and what Richard Sanders was doing at the time. The scenario presented by plaintiffs at trial, and the opinion of their expert that an accumulator should have stopped the tractor from rolling, therefore, shows that there was at least one possible conclusion for which Massey–Ferguson was not responsible. When the plaintiffs' own evidence shows the injury may have resulted from one of two causes, for only one of which defendant would be liable, the burden falls on the plaintiffs to show that the cause for which defendant was liable produced the resulting injury. *Searcy v. Neal*, 509 S.W.2d 755, 761 (Mo.App.1974).

■ Causal connection must be proved by the evidence as a fact and must not be left to mere speculation and conjecture. *Pollard v. General Elevator Engineering Co.*, 416 S.W.2d 90, 95 (Mo.1967). This rule does not, however, require direct proof of the fact. It is sufficient if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred. *Id.* It is only necessary for plaintiffs to show with substantial evidence that the injury is a natural and probable consequence of the negligent act or omission. *Wadlow by Wadlow v. Lindner Homes, Inc.*, 722 S.W.2d 621, 627 (Mo.App.1987).

■ The evidence most favorable to the verdict showed that a manual brake would have prevented the tractor from rolling whether the engine was on or off. There was evidence that the engine died because Rowena Sanders was able to hear the gravel crunch under the tires as the tractor rolled away. With the engine off an accu-

mulator would have allowed the power brakes to function and stop the tractor. A manual brake alone would also have stopped the tractor. Either was sufficient, under these facts, to remedy the situation. We do not find that these are two separate causes. The absence of both, an accumulator and a manual brake, caused plaintiffs' injuries. The trial court did not err in overruling Massey–Ferguson's motion for directed verdict. Massey–Ferguson's first and second points are denied.

■ Massey–Ferguson also asserts error was committed when the trial court overruled its motion for mistrial during closing argument. Counsel for plaintiffs did not argue specific damage amounts in the first half of the closing argument except to remind the jury that during the voir dire and in his opening statement he had told the jurors that he intended to show that the plaintiffs' damages would exceed five hundred thousand dollars. Counsel for Wallace did not discuss damages at all, and counsel for Massey–Ferguson discussed the elements of damages but not specific amounts. During rebuttal, plaintiffs' counsel argued a specific amount, $3,000,000.00, and wrote the figure on a transparency used with an overhead projector. Counsel for Wallace immediately objected and requested a mistrial. The trial court sustained the objection and instructed the jury to disregard the damages figure used by plaintiffs' counsel. The motion for mistrial was overruled. Massey–Ferguson did not object at trial but did include the issue in its motion for new trial.

■ The declaration of a mistrial is the most drastic remedy for trial error and should be granted only when the error is so grievous that the prejudicial effect thereof cannot otherwise be removed. *Vaughn v. Michelin Tire Corp.*, 756 S.W.2d 548, 561 (Mo.App.1988). Further, the determination of the prejudicial effect of final argument is a matter within the discretion of the trial court and that discretion will not be disturbed absent a showing of abuse. *Pfeffer v. Kerr*, 693 S.W.2d 296, 305 (Mo.App. 1985). We find no such abuse. Counsel's objection was sustained and the jury was

instructed to disregard the damages amount.

■ Massey–Ferguson argues that this was not enough because the verdict shows the jury was affected in that it was excessive. We disagree. Richard Sanders effectively lost vision in one eye and sustained serious permanent injuries to his head and left leg. He will be required to undergo surgery at periodic intervals for the rest of his life in order to walk. He has been unable to locate employment since the accident and is unable to retrain to perform less physical work because of the residual brain damage. We find no abuse of discretion. The point is denied.

## WALLACE'S APPEAL

Wallace also raises three points of error. His first point asserts that the trial court erred in overruling his separate motion for directed verdict because plaintiffs failed to make a submissible case of negligence against him. He argues that there was no substantial proof that plaintiffs were injured as a direct result of his negligence. Once again, we review the evidence in a light most favorable to plaintiffs, giving them the benefit of all favorable inferences and disregarding defendant's evidence except as it may be favorable to plaintiffs. *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 183 (Mo.App.1982).

■ Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Vann v. Town Topic, Inc.*, 780 S.W.2d 659, 661 (Mo.App.1989). Proximate cause is such cause as operates to produce a particular consequence without the intervention of an independent cause, in the absence of which the injuries would not have been inflicted. *Id.*

■ As previously stated, there was sufficient evidence presented to allow the jury to reasonably infer that the tractor began to roll because the engine died. An accumulator should have given Richard Sanders the extra hydraulic pressure necessary to engage the braking system, but there was no accumulator on this tractor.

Wallace testified that he did not know what an accumulator was or what function it performed. He also testified, however, that he had been a Massey–Ferguson tractor dealer in the past. This testimony presented a credibility problem. From the testimony and evidence presented, the jury determined that Wallace knew or should have known that the tractor was unreasonably dangerous without an accumulator and that he should have warned Richard Sanders. The jury is the sole judge of the credibility of the witnesses and the weight and value to be given their testimony and they can believe or disbelieve any part of that testimony. *Roark Motor Lodge Interval Sales Corp. v. Lindner*, 779 S.W.2d 684, 686 (Mo.App.1989).

■■■■ The defendants are clearly joint tortfeasors in the sense that they are persons whose independent acts have coalesced to cause a single indivisible injury. *Brickner v. Normandy Osteopathic Hospital*, 687 S.W.2d 910, 912 (Mo.App.1985). Where concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, each is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor. *McDowell*, 799 S.W.2d at 861. An indivisible injury results when two or more causes combine to produce a single injury incapable of division on any reasonable basis and each is a substantial factor in bringing about the harm. *Id.* at 861–862, citing Restatement (Second) Torts Section 433A(2), comment i (1965). Either defendant could have prevented plaintiffs' injuries. Their independent acts were each responsible for Richard Sanders' injuries. It matters not that either, separately, could be responsible; only that both of their acts or omissions proximately caused the injuries. Both defendants are responsible for the whole injury. Wallace's first point is denied.

■■ In his second point, Wallace asserts that the trial court erred in allowing counsel for plaintiffs to inquire of the venire, during voir dire, if any of them were employed by or had an interest in three specific insurance companies. He argues that the inquiry improperly injected the issue of insurance into the lawsuit, and tainted the venire, by implying that Wallace had liability insurance which would protect him, when, in fact, he did not.

During the pretrial conference, Wallace's counsel objected and moved that plaintiffs' counsel not be allowed to inquire about the insurance companies. One of the companies had provided Wallace with a policy of liability insurance, but, in a previous declaratory judgment, it was determined that the policy did not afford Wallace coverage on Richard Sanders' personal injury claim; but, according to the attorney representing Wallace, "... the judgment was, in effect, kind of silent as to whether the company had to go on and continue to defend Mr. Wallace against the claims of Mr. Sanders, and the insurance company has advised that because of the ambiguity in the judgment, they want me to continue on as Mr. Wallace's lawyer ..." Furthermore, the declaratory judgment did not rule on whether coverage would be afforded on Rowena Sanders' emotional distress claim, Count III of plaintiffs' petition. The trial court allowed the questions, but limited how they could be asked. At the close of evidence, Count III, Rowena Sanders' emotional distress claim, was dismissed with prejudice.

■■■ It is well settled that a plaintiff is entitled to qualify jurors regarding their relations, if any, with insurance companies interested in the result of the trial. *Carothers v. Montgomery Ward and Co.*, 745 S.W.2d 170, 171 (Mo.App.1987). The trial court is allowed broad discretion in determining the latitude of the inquiry, and its actions will not be set aside absent a manifest abuse of discretion. *Morris v. Duker*, 414 S.W.2d 77, 79–80 (Mo.1967). If, however, the insurance question is injected in bad faith, its only purpose being to place insurance coverage into the minds of the

jurors, the prejudicial effect deprives the defendant of a fair trial. *Skinner v. Sisters of St. Mary's,* 686 S.W.2d 858, 860 (Mo.App.1985). Good faith in making the inquiry is the fulcrum upon which are balanced the conflicting concerns. *Id.*

We find no abuse of discretion. Plaintiffs' inquiry was limited to a single question pertaining to each of the three insurance companies. At the direction of the trial court, the questions were asked in succession and simply inquired whether any member of the venire panel was employed by or had a financial interest in any of the named companies. From the record before us, we cannot see that the questions violated the principles of good faith. The point is, therefore, denied.

Wallace's final point argues that the trial court erred in overruling his motion for mistrial when plaintiffs' counsel argued damages during the rebuttal portion of closing argument. We have already determined that this was not erroneous, *supra.* The point is denied.

The judgment of the trial court is affirmed.

REINHARD, P.J., and CRANE, J., concur.