**James McDOWELL and Judy McDowell, Appellants,**

v.

**KAWASAKI MOTORS CORPORATION USA, and Paul Everett Silvia, Respondents.**

**WD 42163.**

Missouri Court of Appeals, Western District.

Oct. 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied Jan. 9, 1991.

Max W. Foust, Foust, Strother & Frickleton, Kansas City and Robert L. Langdon, Bradley, Langdon, Bradley & Emison, Lexington, for appellants.

John H. Campbell, Campbell and Meyers, Kansas City, for respondent Kawasaki.

Arthur C. Popham, Jr., Popham, Conway, Sweeny, Fremont and Bundschu, Kansas City, for respondent Silvia.

Before GAITAN, P.J., and CLARK and MANFORD, JJ.

CLARK, Judge.

Plaintiffs-appellants, James and Judy McDowell, had verdicts from a jury awarding them damages against defendants Paul Silvia and Kawasaki Motors Corporation USA totaling $1,650,000.00. On motion by Kawasaki, the court ordered a new trial. The issues on this appeal are: (1) Whether the new trial was ordered on the discretionary ground that the verdict was against the weight of the evidence and, therefore, appellate review is limited to considering only an abuse of that discretion, and (2) If the order did not articulate a discretionary ground, were there other specified grounds of trial error which warranted a new trial. We answer both questions in the negative and order the judgment reinstated.

To place the issues in appropriate context, a brief description of the facts of the case, the relative positions of the defendants and the consequences of the verdicts are necessary.

On July 1, 1985, plaintiff James McDowell was operating a Kawasaki motorcycle when he collided with a truck being driven by defendant Paul Silvia. The evidence was undisputed that the accident occurred when Silvia's truck made a left turn directly into the path of the oncoming motorcycle. At impact, McDowell was thrown from the motorcycle and into the side of the truck. Plaintiffs alleged that the collision also caused a metal bracket supporting the windscreen on the motorcycle to be deflected inward impaling McDowell's right leg and causing severe and permanent injury.

As to defendant Silvia, plaintiffs alleged he was negligent in operating his truck in that he failed to give McDowell the right-of-way but instead, turned into the path of the motorcycle rendering a collision unavoidable. As to defendant Kawasaki, plaintiffs alleged the design of the metal support bracket was defective and unreasonably dangerous in that the metal bracket was pointed at one end and, in a crash, would be anticipated to bend inward upon the leg of the operator as occurred in McDowell's accident.

The cause was submitted on the theory that Silvia and Kawasaki were joint tortfeasors whose independent acts of negligence combined to cause McDowell's injuries. It was plaintiffs' assertion that each was liable for the full damages claimed. Although McDowell admittedly suffered some injuries unrelated to the allegedly defective fairing bracket, a consequence of his body striking the truck and falling to the ground, the claims for damages were restricted by plaintiffs to those resulting to the leg upon contact with the metal bracket. Thus, the jury was not called upon to apportion its award segregating damages for which Kawasaki was not responsible.

There was no issue of comparative fault submitted because neither Kawasaki nor Silvia raised any claim of negligence on the part of McDowell. There was also no issue of relative fault between Silvia and Kawasaki because that, too, was not pleaded. Although Kawasaki could have sought an allocation of fault as between it and Silvia under the doctrine of *Missouri Pac. R.R. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 473 (Mo. banc 1978), it did not do so, relying instead on a denial of any liability for plaintiffs' damages. That defense was incompatible with apportionment of fault. To invoke this latter doctrine, Kawasaki would have been required to accept its status as a joint tort-feasor with Silvia, *Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 243–44 (Mo.App.1987), a position Kawasaki disputed.

The situation as between Silvia and Kawasaki as trial commenced was further complicated by a settlement plaintiffs negotiated with Silvia. In a pre-trial agreement, Silvia paid plaintiffs $50,000.00 and in return, plaintiffs agreed they would not execute on any of Silvia's assets should the trial result in a verdict and judgment against Silvia. The agreement also required that Silvia remain as a party defendant in the case and that he confess liability. The settlement agreement conforms to the provisions of § 537.060, RSMo 1986 and its terms were observed by Silvia who, so far as the trial jury was informed, continued in the case as a co-defendant with Kawasaki. The effect of the settlement was not only to conclude the amount of Silvia's liability to plaintiffs, but also to give Silvia immunity from any claims by Kawasaki for contribution on account of payments Kawasaki must make on the judgment. *Lowe v. Norfolk and Western Ry. Co.*, 753 S.W.2d 891 (Mo. banc 1988). Thus, Kawasaki stands liable for payment of the entire judgment without aid of contribution from Silvia, less only the payment appellants have already received.

We turn now to the issues raised by the appeal.

## I.

■ The first question requiring consideration is whether the trial court's order granting Kawasaki a new trial was based upon the court's determination that the verdict for appellants was against the weight of the evidence. Kawasaki argues that it was and that this court's review ends at this point because, under Rule 78.02, a trial court has discretion to grant one new trial on this ground. Such a ruling is presumptively correct and may be disturbed only in the event of a manifest abuse of discretion. *Phillips v. Phillips*, 443 S.W.2d 144, 146 (Mo. banc 1969).

■ The foregoing is subject, however, to the qualifications imposed by Rules 78.-03 and 84.05. Under the former, the trial court is required to specify of record the ground or grounds on which a new trial is granted. Rule 84.05 provides that if a new trial is granted without an accompanying specification of the ground, the presumption then shifts to an assumption of error

with the burden being upon the respondent to show prejudicial error warranting a new trial. Whether a new trial order complies with the rules cited above is a question for the appellate court to decide. *Follman Properties Co. v. Henty Constr. Co.,* 664 S.W.2d 248, 250 (Mo App.1983).

Appellants contend the order entered in this case does not comply with Rule 78.03 in that it fails to specify as the ground, or a ground, for granting the new trial, a determination that the verdict was against the weight of the evidence and that the new trial was granted for that reason. If the new trial order is deficient as appellants claim, then there is no presumption the new trial was granted on discretionary grounds. *Hammond v. Crown Coach Co.,* 364 Mo. 508, 263 S.W.2d 362 (1954). Because the trial court has the exclusive prerogative to grant one new trial where it concludes the verdict was against the weight of the evidence, a failure by the trial court to so order eliminates that issue from the case. It is not within the authority of the appellate court to re-weigh the evidence. We are therefore called upon to decide in this appeal only the question of whether the trial court did or did not exercise its discretionary authority within the constraints of Rules 78.02, 78.03 and 84.05. If it did not, then the jury verdict is conclusive on the evidence, subject of course to the requirement that plaintiffs' evidence presented a submissible case, an issue considered later in this opinion.

Quite apparently, as the dispute between the parties on this point indicates, the new trial order entered by the court in this case was not specific on the question of whether it issued because the trial court found the verdict to be against the weight of the evidence. Instead, the court employed the ambiguous and frequently criticized practice of not stating the grounds for granting a new trial, but referred instead to several paragraphs of Kawasaki's post-trial motion. In the relevant particulars, the order reads as follows:

> * * * defendant's Alternative Motion for New Trial should be and is hereby sustained for the reasons stated in paragraphs 6, 7 and 8 of Defendant Kawasaki Motors Corp. USA's Alternative Motion for New Trial filed March 31, 1989.

The above order is patently suspect when presented as one resting on a discretionary ground as urged by Kawasaki. If a trial court decides to employ the authority granted under Rule 78.02, it may order a new trial reciting that the verdict is against the weight of the evidence and do so with virtual certainty that the ruling is immune from appellate interference. Moreover, any references to points of trial error as additional grounds for granting the new trial add nothing to the efficacy of the order but serve instead to confuse the basis for the decision. If in this case, the trial court had in fact concluded that the verdict for appellants was against the weight of the evidence, it need only have entered its order so stating and the cause of controversy in this appeal would have been eliminated.

■ Of course, as the section of the new trial order quoted above indicates, that order does purport to state grounds for the ruling, although obliquely stated through reference to Kawasaki's motion. This practice of adopting "shotgun" assignments of error is not favored. *Caldwell v. St. Louis Pub. Serv. Co.,* 275 S.W.2d 288 (Mo.1955). The consequence of such practice is to leave the parties and the reviewing court in doubt as to the precise issues involved in the decision and to complicate the review process. This result is even more onerous in a case such as this where the uncertainty lies not only in which specifications of trial error were adopted but also in whether the new trial was ordered on discretionary or non-discretionary grounds.

Kawasaki argues that the content of its motion paragraphs 6, 7 and 8, incorporated in the new trial order, indicate that the new trial was ordered on the discretionary ground available under Rule 78.02. It further contends, citing *Giles v. Moundridge Milling Co.,* 351 Mo. 568, 173 S.W.2d 745 (1943); *Follman Properties, supra,* and *Kammerer v. Cella,* 585 S.W.2d 552 (Mo. App.1979), that if the motion paragraphs

contain any reference to the contention that the verdict was against the weight of the evidence, this court is obligated to affirm the order as one entered in the exercise of the trial court's discretion. We therefore necessarily turn to an examination of the motion paragraphs cited in the new trial order.

At the outset, we discount entirely any support for the new trial order in motion paragraph 8. That paragraph reads as follows:

8. KMC's Suggestions in Support of its Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial, are filed herewith and incorporated herein by this reference.

Obviously, motion paragraph 8 sets out no assignment of error, let alone a reference to the weight of the evidence. Arguments contained in suggestions supporting the respective motions are necessarily limited in scope by content of the motions themselves and cannot serve to introduce new contentions, even were it to be claimed that the new trial order could be buttressed by a subordinated reference, twice removed. The trial court's incorporation of motion paragraph 8 in its new trial order must be construed to be either a typographical error or a misreading of the motion's contents. In either event, motion paragraph 8, which asserts no point of trial error, could not be considered as a basis for the grant of the new trial. Kawasaki does not appear to contend otherwise.

For entirely different reasons, motion paragraph 6 does not itself lend any support to the claim that the new trial was ordered on discretionary grounds. Although this section of the new trial motion is referred to as "paragraph 6," it in fact consists of eight and one-half pages containing twelve assignments of trial error with numerous sub-points. The allegations of error may be summarized as follows:

1. It was error for the court to submit the case on the theories that Kawasaki and Silvia were joint tort-feasors and that injuries to James McDowell's right leg were indivisible.

2. The court erred when it overruled Kawasaki's motion to sever the claims for trial against the defendants.

3. The court erroneously admitted expert testimony from plaintiffs' accident reconstructionist.

4. Plaintiffs' verdict directing instruction was in error.

5. Plaintiffs' damage instruction was in error.

It is apparent that motion paragraph 6 contains no claim that the jury verdict was against the weight of the evidence. Although the new trial may well have been ordered because the court accepted one or more of the allegations of substantive trial error set out in motion paragraph 6, the points provide no basis to conclude that the order was an exercise of discretion under Rule 78.02.

The elimination of paragraphs 6 and 8 leaves only motion paragraph 7 upon which Kawasaki bases its claim that the court ordered a new trial because the verdict was against the weight of the evidence. That paragraph 7 presents a quandary, however, because it recites as the ground for the claim, the reasons given in paragraph 6, a portion of the motion already demonstrated to be unrelated to the subject of weight of the evidence. The opening sentence of motion paragraph 7 reads as follows:

7. KMC respectfully submits that the jury's verdict is against the greater weight of substantial evidence for the reasons set forth hereinabove in paragraph 6, including all subparagraphs thereof.

Again, because of the failure by the trial court to announce its reasons for granting the new trial, we must attempt to ascertain from the content of Kawasaki's motion what was intended by the quoted language combing the allegations of paragraphs 6 and 7.

Kawasaki's motion paragraph 7 in statements following the first sentence quoted above argues that the verdict was against the weight of the evidence, as set forth in the previous paragraph 6, because the "undisputed physical facts" refuted the expressed opinion of plaintiffs' accident re-

constructionist, Chester Hayes. The claim does not attack the qualifications of the expert or his expressed opinion that the fairing bracket was the cause of McDowell's leg injury. Instead, Kawasaki contends Hayes' testimony, apparently relied on by the jury, should have been stricken, the point made in paragraph 6, because it was based on erroneous facts. In sum, although motion paragraph 7 uses the words, against the greater weight of the evidence, the subject is not the evidence accepted by the jury to reach its verdict, but the evidence on which Chester Hayes based his expert opinion. If the trial court adopted this view, then the new trial was not granted on a discretionary ground but because the court agreed the testimony by Hayes should not have been admitted.

Appellants cite as comparable the case of *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28 (Mo.App.1971). In *Lifritz*, as here, the trial court granted a new trial on the grounds of certain cited paragraphs in defendant's new trial motion. Those paragraphs began, "Because the verdict is against the weight of the evidence in that * * *." Following in each were specifications of error generally contending that plaintiffs did not make a submissible case. The opinion held that once the motion specifications of error, and by inference the order relying on those contentions, go beyond the claim that the verdict is against the weight of the evidence and include particular details of trial error, the consequence is to preclude a finding that the new trial order is supportable as one entered on discretionary ground.

In the subject case, both the new trial order and the language of Kawasaki's motion require the conjunctive consideration of motion paragraphs 6 and 7 as stating an interrelated ground for the grant of the new trial. To the extent weight of the evidence is a component of paragraph 6 at all, and hence of paragraph 7, it is only in the context of what facts should have been assumed by plaintiffs' expert witness when his opinion was requested on the implication of the allegedly defective fairing bracket. Such argument as Kawasaki's motion presented went to this issue and

could not amount to a basis for the trial court to order a new trial under Rule 78.02. We therefore conclude, cryptic as the new trial order and Kawasaki's motion may be, that the new trial was granted on one or more of the non-discretionary grounds appearing in the defendant's motion. Unfortunately, the failure by the trial court to specify which of the numerous claims of error in paragraph 6 of the motion were adopted requires a review of each.

## II.

■ The first claim of trial error raised in Kawasaki's motion contended that the court should not have entertained plaintiffs' cause as one against Silvia and Kawasaki as joint tort-feasors nor were the defendants liable for an indivisible injury. This argument is based on Kawasaki's assertion that appellants' pleadings did not present such a claim and when confronted with the joint tort-feasor theory on the eve of trial, Kawasaki was unfairly surprised.

■ The term joint tort-feasors includes persons whose independent negligent acts have coalesced to cause a single indivisible injury. *Brickner v. Normandy Osteopathic Hosp., Inc.*, 687 S.W.2d 910, 912 (Mo.App.1985). Where concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tort-feasor, and the injured person may at his option institute suit for the resulting damages against any or more of such tort-feasors separately, or all of them jointly. *Bryant v. Frank*, 765 S.W.2d 731, 733–34 (Mo.App.1989).

■ An indivisible injury results when two or more causes combine to produce a single injury incapable of division on any reasonable basis and each is a substantial

factor in bring about the harm. *See* **Restatement (Second) of Torts § 433A(2) comment i (1965).** Whether or not the harm is capable of apportionment is a question of law. If the trial court determines that reasonable minds would not differ on the issue of apportionment, the court may decide the issue and instruct the jury accordingly. *Richardson v. Volkswagenwerk, A.G.,* 552 F.Supp. 73, 80 (W.D.Mo. 1982).

Appellants' petition in this case was in several counts. In Count IV, they alleged that Paul Silvia was negligent in the operation of his vehicle. In Count VI, which asserted that the fairing bracket was defective, they incorporated by reference the other petition counts and alleged that the fairing bracket caused or contributed to cause McDowell's injuries. The status of Silvia and Kawasaki as joint tort-feasors is a reasonable and appropriate conclusion to be drawn from these allegations describing parties who have committed wrongful acts which are separate and distinct but which concur in a point of time and directly cause a single injury. *Swope v. General Motors Corp.,* 445 F.Supp. 1222, 1225 (W.D.Mo. 1978). It was enough for appellants to plead facts showing Silvia and Kawasaki to be alleged joint tort-feasors without the necessity for a statement expressly using the joint tort-feasor terminology.

■ As to the contention that Kawasaki was surprised when appellants proceeded on the claim that Silvia and Kawasaki were jointly and severally liable for an indivisible injury, the record shows that Kawasaki's counsel conceded the point before trial commenced. In a pretrial conference, Kawasaki's attorney stated:

> I want to emphasize we don't dispute that as far as the leg injuries are concerned, and given that they have now dismissed as against the arm, ribs and all that business, we don't dispute that the leg injury produced to this fellow was indivisible, that is to say the second collision and first collision, the injuries produced were indivisible.

There is no merit to the motion assertion that it was error to try appellants' case on the theory of joint tort-feasors liable for an indivisible injury.

### III.

■ The next specification of error concerned the failure by the trial court to grant Kawasaki's motion to sever for trial plaintiffs' claims against the two defendants. That motion was filed on the morning of trial, although Kawasaki had been informed some fifteen months before that the claim against Silvia had been settled for the amount of his insurance policy limit.

■ Whether severance of claims by plaintiffs against Kawasaki and Silvia should have been granted was a matter within the trial court's discretion. *Jones v. Corcoran,* 625 S.W.2d 173, 174 (Mo.App. 1981); Rule 66.02. A court may consider a second time its rulings on discretionary matters and if it believes its discretion was not wisely exercised and that prejudice to the losing party resulted, a new trial may be ordered. *Union Elec. Co. v. Turner,* 446 S.W.2d 430, 433 (Mo.App.1969). Review of the exercise by the trial court of a discretionary ruling which determined that prejudice to the offended party was caused by a previous discretionary decision is limited to the determination of whether the court abused its discretion in finding prejudice. *Oventrop v. Bi–State Dev. Agency,* 521 S.W.2d 488, 492 (Mo.App.1975).

For the reasons already stated, it is uncertain in this case whether the trial court in fact granted Kawasaki a new trial because of the severance issue. The record is clear that the severance motion was originally considered and was expressly overruled. Even though it is a matter of speculation whether the court in ordering the new trial reconsidered the severance issue, we assume for purposes of this opinion that it did. Our review therefore focuses on the question of whether Kawasaki made any showing of prejudice resulting from the original ruling such that the trial court could reasonably have granted a new trial on that account.

It has already been noted that Kawasaki could claim no prejudice because of sur-

prise that Silvia had settled with plaintiffs and would remain a nominal defendant in the case. The information concerning the status of Silvia came to Kawasaki more than fifteen months earlier. There is also no viable argument that Kawasaki's defense was in any way affected by the failure to grant it a separate trial. The theories of liability supporting the claims against the two defendants were entirely different and separate. Plaintiffs' case against Kawasaki was not aided at all by Silvia's acknowledgement of his own liability. Moreover, the verdict form given the jury made no requirement that a finding of liability on Silvia made necessary a finding against Kawasaki or that the full amount of damages not be assessed against Silvia. There is simply no basis to argue that the jury was influenced to find against Kawasaki or to enhance the award of damages merely because the submission included the claims against both defendants.

The aggrievement Kawasaki actually suffered in consequence of the common verdict and the assessment of damages, and the true basis for its complaints, lies in the fact that it must bear responsibility to pay virtually the full award. That consequence follows, however, not because the cases against the two defendants were not severed, but because of the settlement plaintiffs negotiated with Silvia. Kawasaki claims the nominal participation by Silvia as a defendant when the case was tried "worked a fraud on the jury" and presented a sham controversy as between plaintiffs and Silvia. Even if that be so, the procedure employed in the settlement with Silvia is expressly authorized by § 537.065, RSMo 1986 and the statute has passed judicial review. *Butters v. City of Independence*, 513 S.W.2d 418, 426 (Mo.1974).

The conclusion from the foregoing review is that in its post-trial motion, Kawasaki made no showing of prejudice war-

ranting reconsideration by the trial court of its decision not to grant a severance. The order granting a new trial is not supportable on that ground.

## IV.

The next subject addressed in the new trial motion, paragraph 6, is the claim that plaintiffs' verdict directing instruction was in error. Kawasaki there argued that the instruction, applicable to Kawasaki's liability, failed to hypothesize all of the elements of Kawasaki's second collision theory of liability and was confusing and misleading to the jury on issues of fact. More specifically, the point argues that the instruction failed to differentiate between the instrumentalities involved in the first and second collisions, the fairing bracket and the Silvia truck, that it amounted to a roving commission and that it assumed the disputed issue of involvement of the fairing bracket.

■ The verdict directing instruction used in this case [1] was not taken from MAI because the pattern instructions do not include a verdict directing instruction for a second collision case. The modification upon MAI reflected in the subject instruction included the essential elements previously identified as necessary in this circumstance. *See Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 688 (Mo.App.1978). Kawasaki complains, however, that the instruction was in error when it directed attention to the fairing bracket rather than to the motorcycle as a whole.

In *Cryts, supra,* the same objection to an instruction was presented and rejected. The court there noted, in regard to a claim based on an alleged defect in an automobile armrest, that failure of the instruction to focus on the defective nature of the automobile as a whole did not prejudice the defendant. This conclusion is even more

---

1. First, defendant distributed the fairing bracket in the course of [its] business, and

 Second, the fairing bracket was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and
 Third, the fairing bracket was used in a manner reasonably anticipated, and

Fourth, a collision such as that involving the fairing bracket was a foreseeable incident of using the fairing bracket in a reasonably anticipated manner, and
Fifth, such defective condition as existed when the fairing bracket was distributed directly caused or directly contributed to cause damage to plaintiff James McDowell.

appropriate in the present case where the evidence showed the defective fairing bracket was not an inherent component of the motorcycle. It and the windscreen were packaged and distributed as products separate and distinct from the motorcycle and were installed on it after the machine had been purchased. It was not error for the verdict director to address the harm caused by the fairing bracket.

■ The principal complaint Kawasaki makes of the verdict directing instruction centers on the claimed assumption by the instruction of a disputed fact, that is, that the fairing bracket was a cause of McDowell's leg injury. There is no merit to this argument. Read as a whole, *Crabb v. Mid–America Dairymen, Inc.*, 735 S.W.2d 714, 717 (Mo. banc 1987), the instruction clearly requires that before the jury could return a verdict for plaintiffs, it had to find as a fact that the fairing bracket caused or contributed to cause the leg injury. Moreover, Kawasaki's counsel so interpreted the instruction as he argued the case to the jury: "You've got to find that that bracket caused it * * * If you can't find that the fairing bracket did it, you can't find against Kawasaki."

The verdict directing instruction satisfied the requirements for not in MAI instructions. It submitted all the contested factual issues necessary to support the legal proposition on which the right to the verdict was based, it was brief, simple, impartial, not argumentative and was readily understandable by the jury. *Southern Missouri Bank v. Fogle*, 738 S.W.2d 153 (Mo. App.1987). The motion claim that the instruction was in error did not support a grant of a new trial.

### V.

■ Kawasaki's motion for new trial also advanced the contention that plaintiffs' damage instruction was in error because it referred to the occurrence mentioned in the evidence without including a phrase specifically describing the compensable event. Under MAI Notes On Use, when plaintiff's damage is disclosed by the evidence to have been caused by more than

one event, modification of the term "occurrence," is required. Kawasaki asserts that the first and second collisions identified as events in this case made use of the term, occurrence, inappropriate.

The same argument was raised in *Barlow v. Thornhill*, 537 S.W.2d 412, 420 (Mo. banc 1976). That court answered the argument with the following:

> The court has decided supra that there was sufficient evidence to warrant a jury finding that Mr. Barlow was injured in the first collision and that the indivisible-injury rule set forth in *Glick v. Ballentine*, [396 S.W.2d 609] *supra*, and *Brantley v. Couch*, [383 S.W.2d 307] *supra*, applies. That means that both respondents were subject to joint and several liability for all of the injuries sustained in the combined events. Therefore, denominating the combined events as an "occurrence" could not have prejudiced either defendant. The point is overruled.

### VI.

■ A major part of Kawasaki's posttrial motion catalog of asserted errors was the claim, already mentioned, that the court should have stricken the expert opinion testimony by plaintiffs' accident reconstruction expert, Chester Hayes. The testimony by Hayes was to the effect that the only mechanism present in the vicinity of McDowell's right leg at the time of impact which could have caused the injury sustained was the metal fairing bracket. Kawasaki argues that Hayes should not have been permitted to testify about his opinion because the facts on which the opinion was expressed included the mistaken assumption that a left turn lane existed at the accident location and that McDowell did not effectively brake the motorcycle before the collision.

Kawasaki is correct that the evidence showed no left turn lane marked on the pavement at the time of the events. It was apparently added at a later date. In addition, McDowell himself testified that he applied his brakes before the impact. The question is whether these facts were of any

relevance to the expert's opinion of causation. We find they were not.

Kawasaki's point does not contend that factual assumptions necessary to enable Hayes to reach an opinion were omitted, only that he considered as components of the problem the factors of the left turn lane and any braking effect on the speed of the motorcycle. The factual underpinning of an expert witness's opinion goes to weight and credibility rather than admissibility where the facts essential to the opinion are in evidence. *Wadlow v. Lindner Homes, Inc.*, 722 S.W.2d 621, 627 (Mo.App. 1986). It was for the jury in this case to decide whether Hayes' expert opinion should be discounted because of mistakes about the left turn lane and the application of brakes on the motorcycle.

Another reason, from a practical view, makes Kawasaki's point meritless. Hayes testified primarily concerning the reconstructed positions of the vehicles at impact. This opinion was based on a comparative analysis of the damage caused to the motorcycle and the truck. The presence or absence of a left turn lane, according to Hayes, would have some effect on his calculations of vehicle speed, as would the extent of braking of the motorcycle before impact. Speed, however, was not a factor bearing on the witness's conclusion about vehicle positions at impact, an opinion derived entirely from observed physical damage. Any mistake by Hayes in the matters of the left turn lane and the application of brakes on the motorcycle did not affect his ultimate conclusion about how the vehicles collided.

### VII.

The final point to be considered, because raised in Kawasaki's respondent brief, is the argument that the trial court should have directed a verdict for Kawasaki because plaintiffs failed to make a submissible case. Kawasaki asserts that plaintiffs made no case in that, (1) There was no proof McDowell was struck by the motorcycle fairing bracket, the evidence on the subject being the inadmissible testimony of Chester Hayes, (2) Plaintiffs' medical expert could not say to a reasonable degree of medical certainty that the end of the fairing bracket bore any causal connection to McDowell's injury, (3) If the fairing bracket was involved in the leg injury, there was no evidence the injury was thereby enhanced, and (4) Plaintiffs' evidence offered no proof of a safer alternative design or that such a design would have reduced the consequence of injury.

In order for a plaintiff to recover under a products liability theory for an injury caused by an allegedly defective product, he must establish each of the following: (1) Defendant sold the product in the course of its business, (2) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, (3) The product was used in a manner reasonably anticipated, and (4) Plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 637–38 (Mo. banc 1987). These are the same elements that must be established in a second collision case. *See Cryts v. Ford Motor Co., supra.*

In reviewing a challenge to the submissibility of a case, the evidence is to be considered in the light most favorable to plaintiff, plaintiff is to receive the benefit of all inferences reasonably drawn from the evidence and defendant's evidence that does not support plaintiff's case is to be disregarded. *Fahy*, 740 S.W.2d at 638; *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 378 (Mo. banc 1986).

Kawasaki's first contention regarding the testimony of the accident reconstructionist, Chester Hayes, has already been examined in part and rejected. The testimony was properly received, subject to the jury's evaluation of weight and credibility. Hayes concluded that the fairing bracket was the only instrument available in the vicinity of McDowell's leg at the time of impact capable of causing the type of injury sustained. The evidence was sufficient to show contact between the fairing

bracket and McDowell so that the injury could be found attributable to that agency.

Plaintiffs' medical evidence on causation and enhancement came from testimony by Dr. Overesch and Dr. Peterson. Dr. Overesch, an orthopedic surgeon who treated McDowell, testified that the deep jagged gash in McDowell's inner thigh was consistent with an injury caused by penetration of the thigh by the fairing bracket. Dr. Overesch opined that the fairing bracket went into McDowell's leg, hit the bone in a lateral fashion and came back out. His conclusion was based on the fact that the skin and underlying muscle were "sliced" and the wound was a dirty one as if something from the outside had broken the skin and pushed in debris, hair, gravel and pieces of clothing. Dr. Peterson, the design expert, testified that based on principles of engineering mechanics, he believed that if the fairing bracket had not been on the motorcycle, James McDowell would have suffered a lesser injury; his femur would not have been broken in the severe manner in which it was. The testimony of these two witnesses provided evidence establishing a causal connection between the fairing bracket and the injury and that the injury McDowell suffered was thereby enhanced.

Finally, the evidence viewed in the light most favorable to plaintiffs showed the fairing bracket was defectively designed. In Missouri, a product's design is deemed defective for purposes of imposing liability when it is shown by a preponderance of the evidence that the design renders the product unreasonably dangerous. *Nesselrode,* 707 S.W.2d at 377. The concept of unreasonable danger is presented to the jury as an ultimate issue without further definition. *Id.* at 378. Design defects of a simple nature have consistently been found to be submissible on the basis of an expert opinion that an alternative design was feasible. *Duke v. Gulf & Western Mfg. Co.,* 660 S.W.2d 404, 412 (Mo.App. 1983).

Plaintiffs' design expert in this case was Dr. Harry Peterson, a retired professor of engineering. Dr. Peterson has studied the

dynamics of motorcycle impacts since the late sixties and serves as a consultant in motorcycle related litigation. Dr. Peterson testified that the metal fairing bracket sold to James McDowell was defectively designed because it had the potential for increasing injuries during an accident. The bracket is made from a thin sheet metal and is easily bent. The sharp point on the bracket increases its ability to penetrate and on impact causes concentration of force into a smaller area increasing the probability of injury.

Dr. Peterson testified that it is reasonably foreseeable that a motorcycle will be involved in a collision on the highway and that the impact could bend the fairing bracket backwards making it possible to impale the leg of the motorcycle operator. Dr. Peterson suggested simple changes that could be made in the design of the fairing bracket that would make it safer. The fairing bracket as it existed was cantilevered off of a back support that was on the frame of the motorcycle with no front support other than the fairing itself. The fairing is easily broken, unstable unless supported. Upon impact, if the fairing is broken, the brackets are free to be bent in any direction. Dr. Peterson suggested elimination of the hostile points on the brackets and a front cross support to stabilize the position of the brackets in case the fairing is broken.

Kawasaki yet contends the evidence was insufficient to make a submissible case because no proof was presented to show what injuries would have resulted from a safer design. Cited is *Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976), a case which holds plaintiff obligated to plead and prove the availability of a feasible safer design, whether the injured party would have sustained less severe injuries had such an alternative design been used and the extent of the enhanced injury attributable to the design defect. *Huddell* has been criticized for imposing an impossible burden on plaintiffs and for causing the jury to try a hypothetical case. A majority of the courts have rejected *Huddell's* particularized standard of proof. *See* **Kraut, L.,**

*Crashworthiness, Strict Liability: On a Collision Course,* 57 Defense Counsel Journal 150, 151–52 (Ap.1990).

Although no Missouri case has squarely addressed the standard of proof to be used in a second collision case since the *Huddell* decision was made, *Huddell* was considered in *Richardson v. Volkswagenwerk, A.G.,* 552 F.Supp. 73 (W.D.Mo.1982), and expressly rejected as not being representative of Missouri law. The *Richardson* court relied on *Glick v. Ballentine Produce Inc.,* 396 S.W.2d 609 (Mo.1965); *Barlow v. Thornhill,* 537 S.W.2d 412 (Mo. banc 1976); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 689 (Mo.App.1978), as well as several other cases, in deciding that a plaintiff meets his burden of proving causation if the evidence shows that the product was a substantial factor in causing injuries in excess of those caused by the first collision. To make a submissible case, the plaintiff need not prove with specificity those injuries actually caused by the negligence of the original tort-feasor and those caused by the specific defects in the product. The court stated that a strict liability defendant may be held "jointly and severally liable as a concurrent tort-feasor whenever the jury finds that the defendant's defective product was a substantial factor [rather than the sole cause] in producing an indivisible injury to the plaintiff." *Richardson,* 552 F.Supp. at 81. It was adequate in this case for plaintiffs to show that the fairing bracket was a substantial factor in producing the severe injury to James McDowell's leg. Plaintiffs made a submissible case and the trial court did not err when it so held.

### VIII.

This opinion, burdened as it is by the imprecise and inadequate new trial order subjected to review, has undertaken to consider the major points raised in the cited paragraphs of Kawasaki's motion for new trial and also in the related issue of submissibility of the plaintiffs' case. The extent of the new trial motion, however, is such that some variants on the points and lesser contentions have not been expressly discussed. We have, nonetheless, reviewed all the grounds asserted which may have been accepted by the trial court as the basis for its cryptic order. We find no assignment of error sustainable as grounds upon which a new trial was warranted.

For the reasons stated, the judgment is reversed and the cause is remanded with directions that the jury verdict be reinstated and that judgment be entered accordingly.

All concur.