Lawrence L. DUMAS, et al., Plaintiffs,

v.

Anand P. PATEL, et al., Defendants.

No. 04–00072–CV–W–HFS.

United States District Court,
W.D. Missouri,
Western Division.

May 6, 2004.

Ronald J. Stites, William C. Hopkins, David H. Dunlap, Stites & Hopkins, Kansas City, MO, for Lawrence L. Dumas, Mark Euler, Megan Euler, Plaintiffs.

Kathleen M Nemechek, Berkowitz, Stanton, Brandt, Williams & Shaw, LLP–MO, Kansas City, MO, for Anand P. Patel, Hyundai Motor America Corp., Defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Before the court is the motion of plaintiffs Lawrence L. Dumas, Mark Euler, and Megan Euler to remand. This is an action for the wrongful death of the decedent Janice A. Dumas.[1] Plaintiffs alleged that on or about December 8, 2000, defendant, Anand P. Patel, while driving northbound on I–29, collided with the decedent who was driving her car in the southbound lane. On May 24, 2001, plaintiffs filed suit in the Circuit Court of Buchanan County, Missouri, against Patel and asserted claims for wrongful death; and property damages. On December 17, 2002, plaintiffs and Patel petitioned the Circuit Court of Clay County, Missouri, seeking authority to, among other things, settle the wrongful death claim in the amount of $50,000.[2] By an order dated December 26, 2002, the petition was granted. On January 30, 2003[3], plaintiffs and Patel entered into an Agreement To Limit Recovery And

---

1. Decedent was the wife of Lawrence L. Dumas, and the mother of Mark and Megan Euler.

2. Plaintiff Mark R. Euler actually petitioned the court on behalf of himself, his sister, and his father. (Petition for Authority to Settle Wrongful Death Claim: pg. 2; par. 3).

3. It is noted, however, that a copy of the Agreement indicates a date of 2002; yet, it was scratched out, and 2003 was written in its place.

Not To Enforce Judgment ("the Agreement"). On December 5, 2003, plaintiffs filed an action in the Circuit Court of Jackson County, at Kansas City, Missouri. In their petition plaintiffs asserted a claim for wrongful death negligence against Patel, and claims for product defect and negligence against defendant Hyundai Motor America Corp. ("Hyundai"). On January 16, 2004, Hyundai removed the action to this court based on diversity, pursuant to 28 U.S.C. § 1332.[4]

### Removal And Remand

Removal is authorized by 28 U.S.C. § 1441 and governed by 28 U.S.C. § 1446. *Augustine v. Target Corp.*, 259 F.Supp.2d 919, 921 (E.D.Mo.2003). "Under the rule of unanimity, ordinarily all defendants must join in a notice of removal or the case will be remanded." *Augustine*, at 921; *quoting, Marano Enterprises, of Kansas v. Z–Teca Rests.*, 254 F.3d 753, 755 n. 2 (8th Cir.2001). "However, nominal defendants, those 'against whom no real relief is sought,' need not join in the petition." *Augustine*, at 921; *quoting, Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir.2002).[5]

28 U.S.C. § 1447(c) mandates a remand of the case to the state court from which it was removed whenever the district court concludes that subject-matter jurisdiction, which is based on complete diversity, is nonexistent. *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir.2003).

Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Augustine v. Target Corp.*, 259 F.Supp.2d at 921; *see also, Reeb v. Wal–Mart Stores, Inc.*, 902 F.Supp. 185, 187 (E.D.Mo.1995); *citing, Anderson v. Home Insurance Co.*, 724 F.2d 82, 84 (8th Cir.1983). Joinder is fraudulent, if on the face of the state court complaint, no cause of action lies against the resident defendant. *Reeb*, at 187; *Anderson*, at 84. If there is no reasonable basis in fact or law supporting the claim against the resident defendant, or the reviewing court finds that the plaintiff has no real intention of prosecuting the action against the resident defendant, joinder is fraudulent and removal is proper. *Id.* The burden of proof rests with the removing party. *Reeb*, at 187.

Nevertheless, while fraudulent joinder is rather easily defined, it is applied with much more difficulty. *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d at 809.[6] Within this circuit the fraudulent-joinder standard has been stated in varying ways. *Filla*, at 809–10.[7]

---

**4.** In its Notice of Removal, defendant Hyundai states that although defendant Patel was fraudulently joined to defeat diversity, thereby eliminating the need for his consent, Patel has nevertheless consented to removal. (Notice of Removal: pg. 5; par.18).

**5.** A nominal party has been defined as "[a] party who, having some interest in the subject matter of a lawsuit, will not be affected by any judgment but is nonetheless joined in the lawsuit to avoid procedural defects." *Black's Law Dictionary* 1145 (7th ed.1999).

**6.** As the Fifth Circuit recently noted, "Neither our circuit nor other circuits have been clear in describing the fraudulent joinder stan-

dard." *Filla*, at 809; *quoting, Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003). The court in *Travis* provides an in-depth discussion of the various mutations of the fraudulent joinder standard throughout the circuits, and notes that relevant treatises have not been entirely consistent either. *Filla*, at 809 n. 9.

**7.** Indeed, the district courts within the Eighth Circuit have used standards that run the gamut from requiring plaintiff to actually state a cause of action, to a more lenient threshold requiring a removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant.

In 1995, Judge Limbaugh discussed in great detail an apparent division in federal courts as to whether a summary judgment standard or a dismissal standard applies to determine whether a plaintiff has stated a basis for recovery under state law. *Augustine v. Target Corp.*, 259 F.Supp.2d at 921. Judge Limbaugh noted that in *Anderson*, the issue appeared to set forth a standard similar to that for a motion to dismiss. *Id.* That is, that "[f]raudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." *Augustine*, at 921–22; *quoting, Anderson*, 724 F.2d at 84.

Using the dismissal standard the court in *Augustine* looked at the facial allegations of plaintiff's petition to determine whether there existed a reasonable basis in fact and law supporting plaintiff's claim against the resident defendant manager for failing to maintain the parking lot in which plaintiff slipped and fell. *Augustine*, at 922. In so doing, the court held that because the resident defendant did not show that he had no real connection to the controversy, he did not show that he was fraudulently joined. *Augustine*, at 922–23. In another slip and fall action where the resident defendant manager claimed that he was fraudulently joined based on an allegation of negligent maintenance, the court found the reasoning of *Augustine* persuasive, and held that because the manager did not show that he had no real connection to the controversy, he has not shown that he was fraudulently joined. *Manning v. Wal–Mart Stores East, Inc.*, 304 F.Supp.2d 1146, 1150 (E.D.Mo.2004). Similarly, in *Filla*, where

the question arose as to whether there was a cause of action against a property owner for failure to maintain, the Eighth Circuit held that the district court, after looking at the pleadings, properly determined that it should not speculate how the Missouri courts would decide such an issue, and therefore, remand was appropriate. *Filla* [8], at 808, 811.

█ Nevertheless, under the circumstances presented here, I find that careful consideration of this matter, including factual and legal materials outside the pleadings is justified. Initially, plaintiffs filed suit on May 24, 2001, only against resident defendant Patel alleging wrongful death, and property damages. Plaintiffs subsequently entered into an Agreement with Patel which, among other things, precluded "any and all contribution, non-contractual indemnity, or contractual indemnity claims that any defendant may have against Anand P. Patel as a result of any claims Claimant herein may have, now, or in the future..." (Exhibit B: pg. 1). Plaintiffs also agreed "not to enforce a judgment (or any judgment) against Anand P. Patel as a result of any judgment" plaintiffs may receive. (Exhibit B: pg. 2). Plaintiffs further agreed not to execute or enforce any judgment that may be entered against Patel in any lawsuit claiming damage as a result of the automobile accident occurring on December 8, 2000. (Exhibit B: pg. 2; par. 1). Although the parties agreed that the Agreement was not a general release of liability, they continued to agree "that any judgment against Anand P. Patel will not be enforced or executed upon pursuant to the

---

**8.** It is important to note however, that the facts in *Filla*, are significantly inapposite from those presented in the case at bar. For there, speculation arose as to whether there was a cause of action against an owner of property for failure to maintain that property when the road in question was private and the setting was rural. *Filla*, 336 F.3d at 808. Thus, in reviewing the district court's decision, the Eighth Circuit reasoned that the proper standard is whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant. *Filla*, at 811.

terms of this Agreement." (Exhibit B: pg. 3; par. 4). Finally, through the Agreement, plaintiffs expressly released all claims, including garnishment claims, bad faith claims, or any other claims against Patel arising in any way out of the December 8, 2000, accident or State Farm's, Patel's insurance carrier's, obligations or duties arising pursuant to the Policy. (Exhibit B: pg. 3–4; par. 5). In return, plaintiffs received $50,000, and Patel agreed to give truthful testimony regarding the events of December 8th by deposition, and/or at trial. Both Patel and State Farm agreed to accept service of process of a summons and petition for any civil action filed by plaintiffs. Subsequently, on December 5, 2003, plaintiffs commenced suit against Patel solely for wrongful death, and asserted claims for product defect and negligence against defendant Hyundai.

These facts lend themselves to analysis starting with that employed by Judge Otis in *Gable v. Chicago, M., St. P. & P.R. Co.*, 8 F.Supp. 944 (W.D.Mo.1934). There, after remand, plaintiff entered into a covenant with defendant Kent that she would not further prosecute him in the instant action, and she dismissed with prejudice a case pending against him in an Iowa state court. *Gable*, at 945. In looking at the realities, the court found that there was no difference between extinguishing a controversy by a voluntary dismissal in court and extinguishing it by a settlement of the controversy out of court. *Gable*, at 946. "Indeed, the settlement even more finally extinguishes the controversy than dismissal." *Id.* The court concluded that where a plaintiff settles his controversy with a resident defendant, the controversy against the remaining nonresident defendant is then removable irrespective of whether a formal dismissal as to the resident defendant has been entered. *Id.*

Decisions subsequent to *Gable* defined the summary judgment standard as a "pierce the pleadings" procedure, where the court looks beyond the allegations of the complaint to the underlying facts, and determines whether plaintiffs have a meritorious claim against the resident defendant. *Schwenn v. Sears, Roebuck & Co.*, 822 F.Supp. 1453, 1455 (D.Minn.1993). Although the court in *Schwenn* found it inappropriate to apply a summary judgment standard, it further found that in those instances where a court pierces the pleadings and considers factual and legal materials outside the pleadings, it should only consider whether these materials establish facts supporting the claims, not whether these materials resolve the merits of the plaintiff's claims. *Reeb v. Wal–Mart Stores, Inc.*, 902 F.Supp. 185, 188 (E.D.Mo. 1995); *citing, Schwenn*, at 1456. Thus, in *Reeb*, after careful consideration of the matter, the court determined that the primary objective of the presence of the resident defendant was to defeat federal jurisdiction. *Reeb*, at 188. In reaching this conclusion, the court considered materials establishing that the resident defendant manager·was transferred to the store only three days before plaintiff's slip and fall, and had not been aware or made aware of the alleged defective carpet. *Reeb*, at 189.

Finally, in another case similar to the one at bar, involving a settlement agreement between the plaintiff and the resident defendants, the court considered the agreement, but only to decide whether the plaintiffs had a colorable ground supporting their claim, and not for the purpose of deciding whether the resident defendants would be entitled to summary judgment. *Parnas v. General Motors Corporation*, 879 F.Supp. 91, 93 (E.D.Mo.1995). However, a review of the agreement indicated that ·although plaintiffs released the resident defendants from all claims surrounding two wrongful deaths at issue, the lan-

guage of the agreement did not bar a claim of negligence arising from the injuries sustained by another member of the family. *Parnas,* at 93. Consequently, the court found that plaintiffs had an arguably valid claim against the resident defendants, thereby precluding a finding of fraudulent joinder. *Parnas,* at 94.

■ Under the circumstances presented here, and after careful review of the Agreement entered into by plaintiffs and Patel, it is debatable whether Patel's continued presence in this action has some practical consequence. The claim asserted against Patel in the latest complaint is for wrongful death, and the Agreement, by its terms, bars execution on any judgment plaintiffs might receive at trial.

Plaintiffs cite cases which permit joint/several liability even once a plaintiff has settled with one of the parties. *Newman v. Ford Motor Co.,* 975 S.W.2d 147 (Mo. banc 1998); *McDowell v. Kawasaki Motors Corp.,* 799 S.W.2d 854 (Mo.App. 1990). In *Newman,* although plaintiffs entered into a settlement agreement with two of the three defendants, the dispute dealt with the question of whether the agreement should have been disclosed to the jury. *Newman,* 975 S.W.2d at 149.[9] Similarly, in *McDowell,* one of the issues on appeal concerned whether the theory of co-defendants as joint tortfeasors could be submitted to the jury even though the complaint did not assert such a claim.

*McDowell,* 799 S.W.2d at 861 [10]. Neither case discussed, reviewed or determined the effect that joinder of a settling party has on state versus federal jurisdiction.

*Newman* is of doubtful help to plaintiffs, in that it was brought against an insured, under an agreement that only the insured's insurance company would be pursued for satisfaction of a judgment. This procedure, specifically authorized by statute (§ 537.065, RSMo) renders a defendant a nominal or somewhat "hollow" party, in practical terms, but the litigation against defendant is obviously meaningful. Here, however, neither Patel nor his insurer is ultimately at risk.

*McDowell,* is a bit more significant. There, despite a complete settlement of the case against a co-defendant, the trial court declined to sever the settled aspects from the trial against the co-defendant, and the appellate court ruled that thereafter granting a new trial would not be supportable as a purported correction of a procedural error. 799 S.W.2d at 862–3.

Similarly significant as a matter of Missouri practice, argued in justification of joinder as being non-fraudulent, is *Carter v. Tom's Truck Repair, Inc.,* 857 S.W.2d 172 (Mo. banc 1993). That case may be the first in Missouri to deal with a so-called "Mary Carter" settlement with one of several alleged tort-feasors. Like this case and *McDowell,* there was no surviving

---

**9.** The agreement, among other things, limited the liability of the settling defendants, although they agreed to remain a party in the action, without disclosing the full agreement to the non-settling party, the judge, or the jury. *Newman,* at 149. The court's determination, later affirmed by the Missouri Supreme Court, was to deny disclosure to the jury to avoid impermissible prejudice to the settling parties. *Newman,* at 150–51.

**10.** Although plaintiffs negotiated a settlement agreement with one of the defendants prior to trial which, among other things, required the

settling defendant to remain as a party defendant in the case, the issue on appeal was whether the non-settling defendant was unfairly surprised by the joint tortfeasor theory on the eve of trial. *McDowell,* at 861. The court held that, based on the claims alleged in the complaint, a reasonable and appropriate conclusion could be drawn that the alleged wrongful acts, while separate and distinct, concurred in a point of time and directly caused a single injury. *McDowell,* at 862. Furthermore, the non-settling defendant conceded that point at a pretrial conference. *Id.*

controversy with the insurer of the settling party. The Supreme Court found legitimacy in the "need for a single jury to apportion fault among all potentially culpable parties and thereby promote judicial economy and preclude inconsistent verdicts..." 857 S.W.2d at 177. That precise rationale may not apply here, but that does not demonstrate the unsoundness of plaintiffs' preference to have a co-defendant in court.

The parties do not develop or seek to rebut the tactical usefulness of keeping a case against Patel joined with the case against Hyundai. Absent joinder of all culpable parties in the litigation, it seems possible that the jury might be tempted to limit damages or go off on a tangent in assessing fault. Instructions to disregard Patel's responsibility might not be wholly effective. This may create some incentive, apart from forum-shopping, for a case framed in the present manner. Since Patel remains technically exposed to entry of a judgment for his tortious conduct, the above Missouri cases show that it is not necessary that plaintiffs continue to seek serious damages from him, or intend to execute on any judgment obtained. He apparently may be sued in the Missouri courts.

Defendant Hyundai has failed to establish that Patel is an inappropriate party, and thus the court loses diversity jurisdiction.

Current "fraudulent joinder" law seems a good deal more favorable to remands than in the days of Judge Otis. See, e.g. *Filla*, supra. We are not obviously dealing with a claim that is either "frivolous" or "otherwise illegitimate". 336 F.3d at 809.

Defendant Hyundai has the burden of showing a fraudulent joinder, and faces a particularly difficult task when the claim against co-defendant is apparently worth $50,000 or more. The procedural gyrations here have not been shown to be contrary to Missouri law, and could apparently have some tactical purposes, as in the cited cases, rather than being simply a ploy to avoid removal.[11]

The motion to remand (ECF Doc. 4) will therefore be GRANTED, effective three weeks after the filing of this order.

---

11. Compare *DiNatale v. Subaru of America,* 624 F.Supp. 340, 344 (E.D.Mich.1985), where after extensive development of the facts, the court concluded that "the sole purpose of the form of settlement .. was to defeat" the right of removal. The lesson of *Filla*, however, seems to be that when Patel's continuing joinder "might" be deemed legitimate under Missouri law and practice, the answer is "best left to the Missouri courts" on remand. 336 F.3d at 811. An erroneous remand, therefore, could be remedied by a later removal.