**Darrell and Janice SHACKELFORD, Respondents,**

v.

**WEST CENTRAL ELECTRIC COOPERATIVE, INC., Appellant.**

**No. WD 34099.**

Missouri Court of Appeals, Western District.

May 15, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied July 3, 1984.

Application to Transfer Denied Sept. 11, 1984.

Patrick McLarney, Timothy A. Pratt, Shook, Hardy & Bacon, Kansas City, William Aull, Aull, Sherman & Worthington, Lexington, for appellant.

William J. Gotfredson, Edward L. Smith, Theresa Shean Hall, Knipmeyer, McCann, Fish & Smith, Kansas City, Robert L. Langdon, Bradley, Langdon & Bradley, Lexington, for respondents.

Before CLARK, P.J., and DOWD and REINHARD, Special Judge.

CLARK, Presiding Judge.

Respondents, plaintiffs below, had judgment for property damages in the amount of $126,800.00 for the loss of a residence structure by fire. Appealing the judgment against it, appellant in the dispositive point asserts that respondents' evidence did not make a submissible case for the jury and a verdict for appellant should have been directed at the close of the evidence. Reversed.

The ultimate question of fact in the case and the pivot upon which the issue of liability was balanced was whether an act or omission of appellant caused the destructive fire. The evidence offered at trial must therefore be reviewed in detail to determine whether the minimum requisites of a submissible case were supplied. While much of the testimony describing events preceding the fire was uncontroverted, conflicts did arise in some few areas where witnesses did not fully agree. The summary which follows, appropriate to determining submissibility, grants to respondents the benefit of all favorable evidence and inferences, disregards appellant's evidence, except as it aids respondents' case, and assumes the truth of respondents' case, and assumes the truth of respondents' evidence. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 586 (Mo.App.1981).

In the early months of 1974, respondents commenced construction of a dwelling house in Oak Grove, Missouri for their own occupancy. Respondent, Darrell Shackelford is an electrician by trade and acted as general contractor in the construction project. In addition to the overall supervision of the work, Darrell Shackelford also installed all wiring in the house, the house panel boxes and all other interior components of the electrical service. Construction of the house was completed in September, 1974.

Appellant is an electric cooperative utility company which provides service to customers in the area where respondents' Oak Grove home is located. Before respondents began construction of their home, they requested and appellant supplied temporary power by attaching a meter and electric outlets to a pole. Workmen then used extension cords to draw power from the outlets. Once construction had been completed by respondents, appellant provided a permanent service connection by running an underground cable from the transformer to the house and then by attachment of a meter box and cable to the exterior wall of the house.

The meter box is a device which provides for the connection of electric service wires and a meter to measure current usage. Cable which comes from the power source at the transformer enters the meter box through a "knock out" hole at the base of the meter box. The wires are then connected to bars by means of "lugs" at the top of the box. The house wires which carry the electricity to the house panel boxes and thence to outlets and appliances are connected to bars in the meter box by similar "lugs" at the bottom of the meter box which connect the cable entering the house. The attachment of the meter box to the house and the connection of the cables to the lugs within the box was done by employees of appellant.

Electric service to respondents' home commenced through the permanent connection in September, 1974 and continued uneventfully until May 5, 1975 the date of the

fire. Respondents did complain in January, 1975 of erratic bills and in response, appellant sent employees to check the service connection. They found no defect or malfunction but did replace the meter in response to respondents' request. The meter box containing the meter and cable connections is normally sealed and respondents therefore had no access or opportunity to inspect the meter or connections except when appellant's employees were present performing service.

In the late afternoon of May 5, 1975, respondents returned home and Darrell Shackelford detected a dry, musty smell in the basement area where the house panel boxes were located. Although he suspected this odor was indicative of an electrical problem, he was unable to locate any overheating in the panel boxes or in any outlet or connection. He checked the meter box outside without attempting to open the box, but the odor was not present in the area of the meter box. At about 5:30 p.m. the Shackelfords left home for the evening and when they returned at 9:30 p.m., a fire had virtually consumed the structure.

Respondents commenced suit against appellant for the loss of the dwelling alleging various theories of liability. Before submission, respondents elected to stand on the theory that appellant had breached its contract with respondents to supply electric service to the residence by failing to install, inspect and service the meter box in a workmanlike manner. Respondents were therefore obligated to present substantial evidence that appellant's employees had failed in some respect to make a proper connection of the electric service in the area of the meter box, either by the attachment of the cables or of the box itself, and that such act or omission was the cause of the fire. No witness was available who observed the actual outbreak of the fire and the proof of causation therefore depended on reconstruction of the event. Opinion evidence of expert witnesses figures significantly in this aspect of the case.

The principal witness relied on by respondents for proof of causation was Thomas Browne, a professor of electrical engineering. The qualifications of the witness as an expert are not in issue. As a basis for the expression of his opinions, Browne relied on his own inspection of the premises and debris two days after the fire, and again some three weeks later, his conversations with witnesses and minimum assumptions included in the hypothetical question posed by respondents' counsel. Other witnesses offered by respondents included John Winfrey, a fire consultant and investigator and Robert Lowe, fire chief of Sni-Valley Fire Protection District. Although the latter two witnesses were called for the purpose of presenting evidence of their opinions on the cause of the fire, respondents' case was not materially aided by their evidence which would not alone be sufficient to establish the critical proof of causation. Primary attention is therefore directed to the evidence given by expert witness Browne.

The direct examination testimony by Browne was significantly at variance with later testimony supplied on cross-examination. When questioned by respondents' attorney as to his opinion of the cause of the fire, Browne stated the cause to have been: "an electrical disruption of the meter box, and that the heat released by that disruption ignited the wallboard and led to the fire." He explained that in his opinion the electrical disruption was the consequence of loose connections of the cable wires to the terminals or lugs at the bottom of the meter box. Absent subsequent qualification or repudiation of that expression of opinion, respondents' proof of causation would have been complete when linked with proof by respondents' evidence that all connections inside the meter box were made by appellant's employees. Browne's unqualified expression of opinion on direct examination as to the cause of the fire did not, however, survive cross-examination.

Browne first qualified his opinion by saying that the loose connection at the lugs was a "contributing phenomenon" and was the most probable cause of the fire. He then continued to describe "other possibili-

ties." These included a defect in the meter itself, the lack of a bushing in the knock out port, the manner in which the meter box was mounted or later moved and a defect in the electric cable. He also acknowledged that the fire could have originated in the house and caused the electrical disruption in the meter box by the burning of the insulation from the cables. The summary of Browne's opinion as to the cause of the fire is contained in his testimony in response to appellant counsel's inquiry about probability of causation. Browne testified: "I think that all those possibilities could have caused the fire and be consistent with the physical evidence that I uncovered and the other things that I learned by (sic) the occupants of the house prior to the fire. I don't really hold that any one of them is a more powerful probability than the other."

■ Taking Browne's testimony as a whole, 32 C.J.S. *Evidence*, § 566, (1964) it is apparent the expert witness had formed and at trial expressed his opinion to be that the fire may have been attributable to one or more of several possible causes. Among these, a defective meter or a defect in the electric cable would support no recovery against appellant under the submitted theory of unworkmanlike installation, inspection or service. There was no pleaded claim of defective products nor any evidence that appellant bore any responsibility for the manufacture or condition of either the meter or the cable. Additionally, if the fire commenced inside the dwelling and then spread to the cable at the meter box causing the arc by contact of the wires, another possibility included by Browne in his analysis, then unworkmanlike conduct associated with appellant's installation of the meter box would not be relevant to the issue of causation. In short, of the several causes of the fire identified by Browne as equal probabilities, some were associated with appellant's work in providing the meter box and connections and some were unrelated to any participation by appellant in connecting or providing service.

■ The burden was on respondents to prove by substantial evidence that the act or omission of appellant in furnishing and attaching the meter box and cables caused or contributed to cause the fire. Under the circumstances of this case, the evidence, apart from the expert testimony had no tendency to prove to the lay mind the necessary relation of cause and effect, in part because of the destruction of physical evidence by the fire and in part because specialized knowledge of electrical circuits and the properties of electricity were involved.

■ The purpose of allowing expression of the opinion of an expert in these cases, which invades the province of the jury to some degree, is to give the jury the benefit of the expert's opinion on causation. That evidence is of no probative value and does not satisfy the purpose for which it is admitted if the opinion of the expert is couched in terms of "might or could." *O'Leary v. Scullin Steel Co.*, 303 Mo. 363, 260 S.W. 55, 61, (1924). Evidence by the expert that the act or omission of the party charged was a possible factor or was extremely likely to have had a causal effect is not sufficient to make a submissible case. *Kinealy v. Southwestern Bell Telephone Company*, 368 S.W.2d 400, 404 (Mo.1963).

Respondents correctly point out that witness Browne testified without qualification on direct examination that the cause of the fire was an electrical disruption of the meter box caused, in turn, by an improper attachment of the house cables. They then assert any inconsistencies or weaknesses in this opinion developed on cross-examination do not vitiate the primary testimony but present issues of credibility and weight to be considered by the jury. Cited, among other cases in support of this proposition is *Atkinson v. Be-Mac Transport, Inc.*, 595 S.W.2d 26, 31 (Mo.App.1980).

■ The rule relied on by respondents to preserve the substance of witness Browne's initial direct testimony on causation is applicable to cases where the expression of the opinion survives the witness's testimony construed as a whole. Those

inconsistencies and weaknesses upon which the jury brings to bear its evaluation of credibility are details affecting the validity of the opinion, not a choice among conflicting opinions expressed by the same witness. Where the expert first expresses one opinion and in later testimony repudiates that opinion, the original testimony no longer has any probative force. *Hoffman v. Illinois Terminal Railroad Company*, 274 S.W.2d 591, 593, (Mo.App.1955). Here, when witness Browne testified there were a number of possible causes of the fire and no one of them was any more probable than the others, he effectively repudiated his earlier testimony that the cause and source of the fire was localized in a loose connection of wires in the meter box.

■ It is significant to note that witness Browne did not return in the testimony which followed that quoted above to any reaffirmation of the repudiated opinion. The last evidence in the sequence of his testimony was to the effect that in his opinion, a single cause of the fire could not be said to have been the more probable. The identified causes, some five in number, were all possibilities. As the opinion in *Carrow v. Terminal Railroad Association of St. Louis*, 267 S.W.2d 373, 378 (Mo.App. 1954) notes, where the final account repudiates a prior statement and the witness's testimony is therefore inconsistent, the prior statement no longer carries any probative force.

The opinion expressed by witness Browne as to the origin of the fire in the meter box was repudiated by the witness's later testimony, it was thereby shorn of probative force and may not be relied on as substantial evidence by respondent to establish a submissible case.

Notwithstanding the defects in the opinion evidence of Browne, however, respondents argue that substantial evidence to show the cause of the fire was adduced when the testimony of Thomas Browne is considered in conjunction with that of other witnesses, particularly John Winfrey and Robert Lowe. We do not agree.

John Winfrey is a fire consultant and investigator engaged by State Farm Insurance Company to examine the scene of the fire at respondents' dwelling to determine the cause. In somewhat the same pattern as was the case with witness Browne, Winfrey testified on direct examination "that the fire originated at or near the electrical meter box * * * because of electrical difficulty." He later testified that the area of ignition could not be identified as being any closer than several feet from the meter box, it could have included a point in the electric cable underneath the meter box that led down to the circuit breaker and to the furnace disconnect and that he could not say which of some five possibilities caused the fire.

Robert Lowe is the fire chief of the Sni-Valley Fire Protection District and responded to the fire at respondents' home in answer to the alarm on May 5, 1975. He was called as a witness by appellant. The only evidence associated with this witness which tends to aid respondents' case was an extract from a report prepared by the witness and introduced in evidence by respondents. The report as to the area where the fire appeared to have originated stated: "Electrical Service Box on 'N' Wall next to kitchen" and the cause: "Possible Electrical Short in main service on 'N' Wall." Inquiry was not otherwise made of the witness to amplify the content of the report or the basis for the conclusion. Other testimony by the witness did not aid respondents' case.

■ The determination of whether or not there is sufficient evidence to submit an issue to the jury is a legal question and not an exercise of judicial discretion. *Meyer v. Lanning*, 620 S.W.2d 34 (Mo.App. 1981). A case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any essential fact be inferred. Liability cannot rest upon guess work, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. *Graham v. Conner*, 412 S.W.2d 193, 203 (Mo.App.1967). A plaintiff does

not meet his burden if the evidence on any of the essential elements would leave a fact finder "in the nebulous twilight of speculation, conjecture and surmise." *Rossmann v. G.F.C. Corporation of Missouri,* 596 S.W.2d 469, 472 (Mo.App.1980).

The failure of respondents to adduce substantial evidence eliminating from the area of conjecture the identification of the location and cause of the fire and the consequent attribution of liability to appellant for unworkmanlike installation, inspection or servicing of the meter box was fatal to their case. A verdict should have been directed for the appellant and the trial court erred in failing to do so.

The judgment is reversed.

All concur.