William **KOSZOR**, Plaintiff–Respondent,

v.

**FERGUSON REORGANIZED
SCHOOL DISTRICT R–2,**
Defendant–Appellant.

No. 61486.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 16, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 24, 1993.

Application to Transfer Denied
April 20, 1993.

Frank Susman, Randall B. Kahn, Susman, Schermer, Rimmel & Shifrin, St. Louis, for defendant-appellant.

John D. Lynn, Michael Joseph Hoare, Lois Spritzer, Michael J. Hoare & Associates, P.C., St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant, Ferguson Reorganized School District R–2, appeals from a jury verdict in favor of plaintiff, William Koszor, on his claim of discrimination in employment. We find the plaintiff has failed to make a submissible case and reverse.

We set forth the facts most favorable to plaintiff. In 1981 defendant hired plaintiff, a white male, to work as a custodian at McCluer High School in Florissant, Missouri. During the summer of 1988, one of the buildings on the McCluer campus was being renovated. Custodians were responsible for removing furniture no longer in use to make room for replacement furniture. Plaintiff's immediate supervisor, Edward Coleman, a black male, smashed the discarded items with a sledge hammer before throwing them into a dumpster.

In August 1988, Jerry Dyson, a black custodian, asked Mr. Coleman if his father could remove some of the "items" as they piled up. Dyson, Sr. was an independent hauler who had an informal arrangement with the school district to haul away rubbish. That same day, plaintiff asked for and received permission from Mr. Coleman

to take two teacher's desks and a storage cabinet which had not yet been smashed. Mr. Coleman did not have the authority to give such permission. Although plaintiff alleged that he telephoned the district's head of maintenance, Charles Argent, to request permission to remove additional furniture, Mr. Argent denied this. Mr. Argent testified that when he drove past the building one evening, he saw plaintiff with a student desk in his truck. Upon questioning, plaintiff told Mr. Argent he had Mr. Coleman's permission to remove a couple of desks. For purposes of determining submissibility we credit plaintiff's testimony and disregard Argent's. In fact, plaintiff removed forty student desks, two file cabinets, one storage cabinet, and a telephone with a cracked casing and missing a cord, in addition to those items for which he had Mr. Coleman's permission. Plaintiff salvaged sufficient parts from the student desks to reconstruct 12 useable desks which he advertised for sale in the Post Dispatch, although he was unable to sell any. Plaintiff later donated the desks to Goodwill after he learned that he was under investigation for taking school property.

Pursuant to an anonymous tip, Gary Spindler, a white male and head of security for defendant, contacted plaintiff in October 1988. With Mr. Coleman present, Mr. Spindler showed plaintiff a list of items which plaintiff admitted to taking. Mr. Coleman nodded to plaintiff's assertion that he had Mr. Coleman's permission. Plaintiff admitted he did not tell Mr. Spindler about Dyson, Jr.'s request for his father to remove property.

Mr. Spindler reported to William Hays, district supervisor of custodians, the results of his investigation. Mr. Spindler told Mr. Hays, a white male, that plaintiff took the property under the assumption that he had received permission from Mr. Coleman, that he would not pursue criminal charges against plaintiff, and that it would be up to Mr. Hays to decide what to do administratively.

After Mr. Spindler's report, Mr. Hays reviewed plaintiff's work record, which included reprimands for improper absentee form use, attitude problems, attendance problems, and suspension for three days for sleeping on the job. Mr. Hays testified that he considered this record in making his decision to terminate plaintiff's employment. Mr. Hays also consulted with William Horsford, director of the plant department and Mr. Hays's supervisor, and Mr. Fields, principal of McCluer, both white males. Mr. Horsford testified that the decision to terminate was essentially Mr. Hays's, and that he agreed with the decision and forwarded it to Dr. Wright, a black male who was the assistant superintendent of personnel for the district. Neither Mr. Hays nor Mr. Horsford knew of Dyson Jr.'s involvement in the removal of property at the time they made their decision. On October 28, 1988, Mr. Hays called plaintiff to his office, and in the presence of Tommy Davis, his black male assistant, terminated plaintiff's employment and provided him with a notice that termination was for theft of school district property. Mr. Hays told plaintiff that a group of individuals was responsible for his termination and that such decision was final. Plaintiff was not given the opportunity to explain his actions.

After plaintiff's dismissal, defendant learned of Dyson, Jr.'s involvement in the removal of school property. Although no action was taken against Dyson, Jr., Mr. Coleman received a letter of reprimand for giving the two custodians, Dyson, Jr. and plaintiff, permission to remove district property when he had no such authority. Plaintiff filed a complaint with the Missouri Commission on Human Rights. Upon receipt of a right to sue letter, plaintiff filed suit in the St. Louis County Circuit Court. After a three day trial, the jury awarded a $60,000 verdict in favor of the plaintiff. Defendant filed post-trial motions which were heard and denied. This appeal ensued.

■ Defendant's first point on appeal is that the denial of its motions for directed verdict or judgment notwithstanding the verdict was erroneous as plaintiff failed to make a submissible case. We agree. The

determination of whether there is sufficient evidence to submit an issue to the jury is a legal question and not an exercise of judicial discretion. *Shackelford v. West Central Electric Cooperative, Inc.*, 674 S.W.2d 58 (Mo.App.1984) [9–12]. A case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Id.* In proceedings involving alleged discriminatory employment practices, Missouri courts have adopted federal standards set forth in suits brought under the Civil Rights Act. *Valle Ambulance v. Missouri Commission on Human Rights*, 748 S.W.2d 710 (Mo.App.1988) [3]. A plurality of the United States Supreme Court has held that the plaintiff must prove his race was a factor in the employment decision *at the moment it was made. Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1995, 104 L.Ed.2d 268, 293 (1989) (emphasis added). The two concurring decisions join the plurality as to this point. Thus, under the federal standards set by the highest court in the land, if the illicit factor was not a motivating factor at the time the employment decision was made, the plaintiff has not made a submissible case. It is difficult to conceive of a "motivating factor" which was unknown at the time the decision was made. Both parties have discussed whether proof of a mixed-motive case requires direct evidence, or if indirect/circumstantial evidence will suffice. Whether plaintiff sued under the *Price Waterhouse* mixed-motive theory or the *McDonnell Douglas* pretext theory is irrelevant; plaintiff has not provided one scintilla of evidence, direct or indirect, that race was a factor at the time the employment decision was made. By plaintiff's own admission, he did not tell others about Dyson, Jr.'s alleged removal of district property. Neither Mr. Hays nor Mr. Horsford knew there might be other employees involved, regardless of race. Nothing in the record indicates that plaintiff's race was a consideration at the moment the decision was made to terminate his employment.

Plaintiff's theory of liability rests solely on the premise that defendant's subsequent failure to discipline Dyson, Jr., an allegedly similarly situated employee of a different race establishes that the reason for plaintiff's discharge was his race. Nothing in the law supports the premise that because a black employee, whose conduct was unknown when plaintiff was terminated, was not also terminated the plaintiff, without more, has established that his termination was racially motivated because he was white.

Nor does this court find the plaintiff and Dyson, Jr. to be similarly situated. It is incumbent upon plaintiff to prove that he and Dyson, Jr. were similarly situated. *Hayes v. Invesco, Inc.*, 907 F.2d 853 (8th Cir.1990) [1–3]; *Smith v. Monsanto Chemical Corporation*, 770 F.2d 719 (8th Cir. 1985) [4]. Plaintiff has failed to do so. Plaintiff improperly removed the property and attempted to sell it. Dyson, Jr. merely asked permission for his father, a non-employee, to remove property. As Dyson, Sr. was not an employee he could not be disciplined as one. The only *employee* who actually removed property and attempted to sell it was plaintiff. Plaintiff and Dyson, Jr. were similarly situated only in that both asked about removing property, for which nobody was disciplined. Further, plaintiff's poor work record was evinced at trial and was a factor in the decision to terminate his employment; no evidence as to Dyson, Jr.'s work record was presented. Plaintiff's attempt to describe himself as similarly situated to Mr. Coleman, his supervisor with a good work record and 13 years of seniority must also fail.

Stripped of its racial discrimination costuming, this is an alleged wrongful discharge case by an employee at will. Such actions do not lie in Missouri. *Johnson v. McDonnell Douglas Corporation*, 745 S.W.2d 661 (Mo. banc 1988) [6].

We need not reach defendant's other points on appeal, as plaintiff has failed to make a submissible case. For the foregoing reasons, we reverse the judgment of the trial court and enter judgment for the defendant.

AHRENS, J., concurs.

GARY M. GAERTNER, P.J., dissents.