Gary **SPARKS** and Ellen **Sparks, Respondents,**

v.

**PLATTE–CLAY ELECTRIC COOPERATIVE, INC., Appellant.**

**No. WD 46566.**

Missouri Court of Appeals, Western District.

July 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied Oct. 26, 1993.

David P. Madden, Fisher, Patterson, Sayler & Smith, Kansas City, for appellant.

John J. Phillips, Phillips, McElligott, Ewan & Hall, P.C., Independence, David R. Schollars, North Kansas City, for respondents.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

This appeal arises out of a claim that Platte–Clay Electric Cooperative, Inc. (Platte–Clay) was negligent in servicing an electric meter which resulted in a fire that destroyed the residence of Gary and Ellen Sparks. Platte–Clay appeals from a judgment of $162,096.68 in favor of Gary and Ellen Sparks. In its sole point on appeal, Platte–Clay argues that the trial court erred in overruling its motion for directed verdict and its motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Platte–Clay asserts that the evidence did not support the verdict because the only testimony that Platte–Clay was negligent was that of Willard S. Norton, the Sparks' expert, and his opinion was without any factual basis. A review of the record demonstrates that there was sufficient evidence of negligence and causation to submit the case to the jury. The judgment is affirmed.

The technical nature of the instant case requires the discussion of some background information about residential electrical service prior to reciting the facts. Electricity is conducted by overhead or underground electric lines known as service wires which run from a pole mounted transformer to a meter mounted on an outside wall of the house being provided service. The builder of the house installs a structure called the meter base upon which the supplier of electricity installs the meter, connects electricity to it and seals the meter box so that the electric company is the only entity with access to the meter box. The meter measures the consumption of electricity and is owned and controlled by the utility company. Wires installed by the builder run from the meter to the breaker box in the house. The breaker box distributes electricity to circuits within the house.

Platte–Clay is the public utility which supplied electric power to the residence of Gary and Ellen Sparks in Holt, Missouri. A meter box, which was constructed out of steel and owned and controlled by Platte–Clay, was mounted on the side of the Sparks' house to measure the electricity they used.

The Sparks had owned their home since 1980 without any substantial electrical difficulties. About October 29, 1987, a Platte–Clay employee, Steve Wayne Maddox, went to the Sparks' residence to remove the meter because the Sparks had failed to pay their electric bill. The dispute over payment of the electric bill is not an issue in this case. The meter was not removed, nor was service disconnected, because Maddox discovered a cracked connector between two lugs inside the meter.[1] Another Platte–Clay employee, Steven A. Harms, repaired the cracked connector. In making that repair, Harms testified that "we shut the electricity off first and then we pulled this meter out. Then we took this pipe off and dug a hole down underneath to splice a wire in. Then we took this lug out behind the meter and took it out and replaced it." Harms testified that he checked all the connections in the meter base when he replaced the connector and that they were all properly tightened.

In November of 1987, the Sparks began experiencing problems with lines disrupting the reception on their four televisions. Ellen Sparks testified that in the latter part of November she called Platte–Clay to report the problem with the televisions. She was

[1] Lugs, which in the meter box at issue were made of porcelain graphite, are used to connect wires.

told that it did not "sound" electrical and no work order was prepared. Ellen Sparks made a second call to Platte–Clay in late December or early January to again complain. She was told at that time that it might be a reception problem due to someone in the area having a C.B. radio base. She checked with her neighbors and no one else had a problem with television reception. A repairman examined the television and found nothing wrong with it. He suggested that it sounded like electrical interference. In January of 1988, the Sparks began to notice that with some regularity their digital clock blinked as if the electricity to it had been interrupted. Although Ellen Sparks did not specify the date of the call, she testified that she made one other call to Platte–Clay to complain about the electrical problems.

On March 18, 1988, Gary Sparks was at home with his children fixing lunch when he smelled smoke. After observing smoke coming from the recessed lights in the living room ceiling, Gary Sparks attempted to call the fire department, but the phone was dead. Gary Sparks and his children left the house immediately to call the fire department at a neighbor's house. Gary Sparks saw smoke and flames coming from the northeast section of the house at a point where the siding starts, "just right under the [electric meter] basically, in that area." The Sparks' home and its contents were totally destroyed by the fire.

The Sparks filed suit against Platte–Clay for negligence in failing to prevent a high resistance short circuit from developing in the meter box. It was the Sparks' contention at trial that, after the repair, a loose aluminum wire in the meter box caused a short. The Sparks alleged that the short melted the wire and the meter box causing molten metal to drip onto and ignite combustible material beneath the meter box. The burning material ignited a woodpile, which in turn set the house on fire.

Platte–Clay filed a motion for summary judgment at the close of the Sparks' evidence and a motion for directed verdict at the close of all the evidence, which were denied by the trial court. The court submitted the case to the jury and the jury found in favor of Gary and Ellen Sparks in the amount of $162,-096.68. Judgment was entered upon the jury verdict. The court denied Platte–Clay's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. This appeal followed.

■ Platte–Clay contends that the sole question for determination by this court is whether the trial court correctly ruled that the Sparks had made a submissible case. In reviewing whether a submissible case on the disputed factual issues has been made, this court views the evidence and all reasonable inferences which can be drawn from that evidence in the light most favorable to the plaintiffs. *Haynam v. Laclede Elec. Co-op., Inc.,* 827 S.W.2d 200, 205 (Mo. banc 1992). Whether there is sufficient evidence to submit an issue to the jury is a legal question and is not an exercise of judicial discretion. *Shackelford v. West Central Elec. Co-op., Inc.,* 674 S.W.2d 58, 63 (Mo.App.1984).

■ The mere occurrence of a fire does not raise a presumption of negligence or a presumption as to the cause of the fire. *Craddock v. Greenberg Mercantile,* 297 S.W.2d 541, 547 (Mo.1957). In establishing a submissible case on the issue of negligence, the plaintiffs must prove by substantial evidence that (1) there was negligence and (2) such negligence caused the fire. *Id.* "There must always be substantial evidence that the thing which actually occurred, foreseen or not, resulted from, or was at least contributed to by, the act or acts of defendant." *Id.*

■ In the instant case, there were no witnesses to the actual outbreak of the fire. The testimony of Gary and Ellen Sparks was relevant to the issue of negligence as well as causation. They also presented evidence on the issue of causation from their expert, Willard S. Norton. Norton was hired by the Sparks' insurance company to evaluate the loss and determine the cause of the fire. Platte–Clay moved for a directed verdict at the close of the Sparks' evidence. Upon the denial of this motion, Platte–Clay presented evidence in its behalf. Evidence presented by Platte–Clay favorable to the Sparks may be considered in determining if the Sparks

presented substantial evidence of negligence and causation to make a submissible case. *McDowell v. Kawasaki Motors Corp. USA,* 799 S.W.2d 854, 865 (Mo.App.1990).

■ Viewing the evidence in the light most favorable to the plaintiffs, the evidence showed that until Platte–Clay discovered a broken connection in the meter box and made repairs, the Sparks had not suffered any substantial electrical difficulties. Within a short time after the repairs were made, the Sparks noted electrical happenings in their house. Although Ellen Sparks called Platte–Clay three times to report the problems, Platte–Clay did not consider the problems to be electrical and did not prepare work orders.

The Platte–Clay employee who originally discovered the cracked connector in the meter box at the Sparks' residence did not have any idea what caused the lug to crack. Platte–Clay repaired the meter, because it was responsible for the electrical meter and had sole legal access to it. Platte–Clay prevented anyone else from having access to the meter box by locking it and placing a seal on it.

Platte–Clay employee, Maddox, testified that in his experience the wire connections to the lugs become loose "occasionally" or "periodically." Platte–Clay employee, Harms, testified at trial that in his twenty-odd years on the job the aluminum wire attached to the lugs had come loose only a few times. He was impeached, however, with his prior deposition testimony that the aluminum wire which attaches to the lugs "frequently" becomes loose. Norton testified that aluminum wire is susceptible to loosening over time or if abused. Despite the fact that connections in the meter box periodically or frequently become loose, Platte–Clay has no schedule for regular inspection or maintenance to remove the lid and check the connections. The only time a meter is checked is if a customer reports a problem.

Norton testified at trial that after inspecting the meter box, it was his opinion that the cause of the fire was a fault in the electric meter which caused the arcing that melted the metal meter box. Norton also testified that the fault in the meter box was a high resistance short circuit which was most likely caused by a loose connection. It was Norton's opinion that the molten metal dripped upon combustible material which caught fire and in time set the house on fire. Norton testified that the breaker box "made no contribution to the fire."

Platte–Clay agreed that the cause of the fire was an electrical short, but denied the Sparks' version of where the fire started. Platte–Clay alleged that the fire resulted from an electrical short on the wire running between the meter box and the breaker box. Platte–Clay did not install this wire and was not responsible for inspecting or maintaining it. Platte–Clay argues on appeal that Norton admitted during his deposition and on cross-examination that the short could have occurred on the wire between the meter box and the breaker box and could have fed back into the meter box causing the kind of damage that the meter box suffered.

Platte–Clay contends that *Shackelford,* 674 S.W.2d 58, is analogous to the instant case. In *Shackelford,* the plaintiffs, after their house burned, filed suit against the electric company claiming that loose connections of the wires to the lugs at the bottom of the meter box had resulted in an electrical disruption which started a fire. During direct examination, the plaintiffs' expert testified that the loose connections disrupted the electrical current causing the fire. During cross-examination, however, the expert expressed his opinion that the fire could be attributed to several possible causes. The expert witness in *Shackelford* testified that all the possible theories as to the cause of the fire were consistent with the physical evidence and that he could not determine that any one of the possible causes of the fire was more probable than another. This court in *Shackelford* held that "the failure of respondents to adduce substantial evidence eliminating from the area of conjecture the identification of the location and cause of the fire" was fatal to their case. *Id.* at 64.

Platte–Clay argues that the expert's testimony in *Shackelford* and Norton's testimony are analogous because both acknowledge that the competing theories of the cause of the fire are just as likely as their own theories.

*Shackelford* is distinguishable from the instant case and Platte–Clay has mischaracterized Norton's testimony by comparing it to the expert's in *Shackelford.* Norton clearly expressed his opinion that the most probable cause of the fire was a loose connection in the meter box. Although Norton acknowledged that a short on the wire between the meter box and the breaker box could have caused the damage the meter box suffered, he refused to abandon his opinion that the fire had not started in that manner.

Norton insisted both during his deposition and trial testimony that the short occurred in the meter box. Norton testified as to the physical evidence that led him to formulate this opinion. Norton also discredited Platte–Clay's theory of how the fire started by pointing out that there would have been arcing of the variety that existed on the meter box lid if the short had occurred on the wire between the meter box and the breaker box, and there was no melting where such wire entered the meter box. Norton, unlike the expert in *Shackelford,* clearly set forth his opinion that the short had occurred in the meter box and refused to acknowledge that Platte–Clay's theory was equally likely to have been the cause of the fire. The expert's testimony in *Shackelford* is not analogous to Norton's testimony because the expert did not find any theory more likely than another and stated "I don't really hold that any one of them is a more powerful probability than the other."

The Sparks established a submissible case by proving that all connections within the meter box were made by Platte–Clay because Platte–Clay was the only entity with access to the meter box; that they began experiencing electrical problems after Platte–Clay worked on the meter and it can be reasonably inferred therefrom that the Platte–Clay worker improperly repaired the meter; and that in Norton's opinion the cause of the fire was a loose connection in the meter box which caused a short. Platte–Clay presented evidence in support of its theory that the fire was caused by a short on the wire between the meter box and the breaker box. The evidence presented resulted in two competing theories of the cause of the fire. Both parties presented expert witnesses, as well as various other witnesses, which testified as to the two competing theories.

■ The case ultimately came down to a decision about the credibility and believability of the witnesses. It is the jury's duty to judge the credibility of the witnesses and to determine the weight and value that is to be given their testimony. *Havel v. Diebler,* 836 S.W.2d 501, 504 (Mo.App.1992). It is within the jury's discretion to believe or disbelieve any part of a witness' testimony. *Roark Motor Lodge I. Sales v. Lindner,* 779 S.W.2d 684, 686 (Mo.App.1989). The jury obviously found Norton's testimony to be the most credible and believable because its verdict favored the Sparks. The jury's determinations as to the weight of the evidence, the credibility of the witnesses and the resolution of conflicts in the testimony are not to be disturbed on appeal. *Steif v. Limpiphiphatn,* 814 S.W.2d 695, 697 (Mo.App.1991). The judgment is affirmed.

All concur.