Gary **FRIEND**, Appellant,

v.

Ranny L. **HOLMAN**, Respondent.

No. WD 49018.

Missouri Court of Appeals, Western District.

Nov. 22, 1994.

---

1. All the testimony presented at trial covers seven pages in the transcript.

Bruce B. Brown, Kearney, for appellant.

John R. Sanderford, Fincham & Sanderford, Kansas City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

LOWENSTEIN, Judge.

Gary Friend (Appellant) appeals the trial court's grant of a directed verdict in favor of the defendant, Ranny Holman (Respondent). In this civil suit, Appellant sued Respondent, seeking to recover from Respondent $8,000 in cash taken from a desk drawer located in Appellant's home. At the close of all the evidence the trial court sustained Respondent's motion for a directed verdict for failure to make a submissible case and dismissed the jury.

### Statement of Facts

Under the standard of review, discussed *infra,* the facts are as follows: Between the dates of June 20, 1991 and June 23, 1991, someone forcibly entered Appellant's home in Liberty, Missouri. Appellant was out of town at the time and had not given anyone permission to enter his home. Apparently, entry to the home was made by kicking open a locked back door from the outside to the garage and then shoving open another locked door from the garage into the upstairs area

of the house. The billfold containing the cash had been concealed in the lower left hand desk drawer behind several files in the back of the drawer. Nothing else was missing, but some of the other drawers of the desk were open. In addition, one of the drawers of a clothes dresser was open and another removed, but the contents were untouched. A screen door to the sliding glass patio door on the first floor was found ajar.

Appellant testified he had never told anyone about the presence of the billfold and cash, but there were two persons who had previously been in a position to have access to his desk, Respondent and Ron Hartman. Both of these people at one time or another, had access to the home and desk. This was because Appellant rented the downstairs of his house to Respondent. Both levels of the house were fully equipped, so the floors did not need to be shared.

Hartman, Respondent and Appellant's son would sometimes socialize and play pool in Appellant's part of the house. Only at that time did Appellant let them use the upstairs bathroom and occasionally the kitchen. Appellant testified that he always kept his office door closed and never allowed the others access to the office.

Later, Hartman moved out, leaving Respondent as the only renter.

According to the trial testimony of both Appellant and Respondent, Appellant found Respondent in his office using the telephone recorder. Appellant testified that he specifically informed Respondent to stay out of the office and not to use the recorder. This was the only confrontation of record.

Appellant then decided to sell the house, and gave Respondent five weeks notice to move out. Respondent did not move out. Appellant gave Respondent four additional days to move out. Respondent moved most of his things into the garage, and left a few things in the house. Appellant was preparing to go out of town, but Respondent phoned him, telling him he had left his stereo cover in Appellant's garage. Appellant told Respondent he was planning to go out of town and he would either have to wait until Appellant returned or until Appellant could

arrange for his son to let Respondent in the house. Appellant's son testified that Respondent came by his place of employment that evening asking for the key to the house, but that he would not give Respondent the key nor accompany him to the house.

After the presentation of this evidence to the trial court, Respondent moved for a directed verdict. The trial judge, in granting the directed verdict for Respondent stated:

[t]his is still extremely circumstantial, and there is no causal connection between the two, and I cannot as a matter of law find that there is any supportive evidence to put the Defendant (at the scene) other than the Plaintiff's suspicion, and the Plaintiff's suspicion is not sufficient. As a result, I don't have any choice. This may very well have occurred just exactly the way the Plaintiff said, but I'm afraid this is one of those awkward situations where it just can't be proven and as a result, I will sustain the motion of the Defendant.

### Standard of Review

There seems to be confusion between the parties on what the proper standard of review should be in a directed verdict situation.

█ In reviewing a directed verdict granted in favor of a defendant, the Court of Appeals will view evidence and permissible inferences most favorable to the plaintiff, disregard contrary evidence and inferences and determine whether, on evidence so viewed, plaintiff made a submissible case. *Heacox v. Robbins Educational Tours, Inc.,* 829 S.W.2d 600, (Mo.App.1992).

█ An appellate court reviewing a trial court's direction of a verdict in favor of a defendant must recall that directing a verdict is a drastic measure. *Miles v. Iowa Nat. Mut. Ins. Co.,* 690 S.W.2d 138 (Mo.App.1984).

█ More specifically, a presumption is made in favor of reversing the trial court's grant of a directed verdict unless the facts and any inferences from those facts are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Essex v. Getty Oil Co.,* 661 S.W.2d 544 (Mo.App.1983).

Respondent cites *Fly v. Royal Auto Repair*, 747 S.W.2d 237 (Mo.App.1988) as being the proper standard of review. Respondent's reliance is misplaced. *Fly* does stand for the proposition that if any reasonable reason exists to support the directed verdict, it must be affirmed. However, that is not the starting point of the review and there is no presumption of affirmance. Respondent omits the language in *Fly* which states that only **after** one looks at only the evidence favorable to the plaintiff (disregarding all contrary evidence and inferences) and only **after** it is discernable that reasonable minds could not differ as to the result, does the court affirm based on a logical reason supporting the directed verdict. *Id.* at 238. The language of *Fly* does not change the applicable standard of review in a directed verdict case, only to add an additional twist to the review once the first steps of the test have been met. Furthermore, this court expressly set forth in *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982), that the focus is not upon the **reasonableness** of the grounds supporting the trial court's judgment, but is instead upon the facts in evidence together with the legitimate inferences therefrom and whether such evidence is so strongly against a plaintiff as to leave no room for reasonable minds to differ. *Id.*

### Points on Appeal

Essentially, Appellant presents one point on appeal: The trial court erred in granting a directed verdict for Respondent because reasonable minds could differ in the result. The point is broken down into several assertions: 1) Appellant's evidence sufficiently established that the perpetrator knew the location of the cash prior to the unlawful entry into his home; 2) Respondent had access to the office and desk containing the cash for an extended period of time and admitted being in Appellant's office on numerous occasions and being in the desk drawer on at least one occasion; 3) Appellant introduced evidence that Respondent did not have permission to be in his office and even been specifically warned to stay out; 4) There was some evidence of Respondent having an erratic income and employment record; 5) The sliding glass door to Respondent's former bedroom was unlocked after Respondent had moved out; 6) Respondent knew that Appellant was going to be out of town for three days; and 7) Respondent had contacted Appellant's son at his job and asked for the house key.

By these seven facts, Appellant asserts he had removed the identity of the thief from the realm of rank conjecture and by substantial evidence and the reasonable inferences therefrom, established a reasonable probability that Respondent took the money, and reasonable minds could differ in reaching a verdict.

■ Again, the analysis here is to decide as a matter of law whether or not the plaintiff made a submissible case. *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 423 (Mo.App.1973). In so doing, the court must consider the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all supporting inferences fairly and reasonably deducible from the evidence. *Id.* at 423.

Courts "must bear in mind that the credibility of the witnesses and the weight and value to be accorded to their testimony are matters peculiarly within the province of the jury ... in keeping with the time-honored principle that the jury may believe all or none of the testimony of any witness, or may accept it in part and reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case". *Id.* Finally, the *Bridgeforth* court held that courts "must recognize that a case should not be withdrawn from the jury unless the facts in evidence and the inferences fairly deductible therefrom are so strongly against plaintiffs as to leave no room for reasonable minds to differ." *Id.*

■ The *Bridgeforth* case was one where the jury was required to find, via testimony and circumstantial evidence only, whether or not the defendants started a fire on their own property, which then spread to the neighbors (plaintiff's) property. The court found that, even though there were no admissions from the defendant, no witnesses to the starting of the fire, and no direct evidence linking the cause of the fire to the defen-

dants, the plaintiff still made a submissible case such that reasonable minds could differ as to the cause of the fire. *Bridgeforth* is not unlike the case at bar. Here, Appellant has put forth substantial testimonial circumstantial evidence linking Respondent to the scene of the stealing. Although perhaps not enough to convince a jury that Respondent is, indeed the perpetrator, this court finds that it is certainly enough under the *Bridgeforth* standard that reasonable minds could differ in believing or disbelieving the information.

Additionally, once a case is submitted to a jury, the Missouri Approved Instructions instruct the jury as to the proper burden of proof, so as to avoid any mistake by the jury as to who has and remains the party with the burden of proof. *MAI* 3.01 provides as follows:

> In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden of causing you to believe a proposition of fact is upon the party who relies upon that proposition. **In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.**

In this case the Respondent would have been adequately protected from an adverse verdict based on possibilities or on circumstantial evidence by the submission of this instruction to the jury.

█ A trial court should not withdraw a case from the jury unless all of the evidence is so strongly against plaintiffs as to leave no room for reasonable minds to differ. If it is determined that reasonable minds could differ it is incumbent upon the judge to let the case go to the jury, who will then be instructed by the MAI as to the party bearing the burden of proof and persuasion.

That being the case, this court will now review the evidence presented at the trial court level. All of the evidence comes in the form of testimony, which although circumstantial, establishes at least a possibility the jury could have found that Respondent was the thief.

First, testimony established Appellant's home was not ransacked and that the only missing item was cash from a wallet which Appellant kept hidden inside a drawer. That would lead to the logical conclusion that the perpetrator knew beforehand where the money was hidden. Thus, the perpetrator would need to have had prior access to this area. Testimony from both parties established that Respondent did have prior access of this area and knowledge of the desk's contents.

Second, Respondent himself testified that he indeed was in the office and desk drawers several times. Under *Bridgeforth*, 490 S.W.2d at 421, this would constitute an admission against interest, bearing on an incidental/circumstantial issue, albeit not a direct admission of the ultimate fact in issue. *Id.* Third, there was testimony from both sides that Respondent had left things in Appellant's garage after he moved out of Appellant's house. After Appellant let Respondent in to get some of the things, Appellant checked the sliding door. The sliding door was unlocked. Appellant testified that he locked it before Respondent came over and then again (after he found it open) after Respondent left. Apparently, this happened several times, leading to possible inference that Respondent had unlocked the door, hoping to gain ready entry to the house. There is also the undisputed testimony that Respondent knew Appellant was going to be out of town and testimony from Appellant's son that Respondent came and asked him for the keys to the house, which Appellant refused to give him. Finally, Appellant presented evidence which works to exclude other potential culprits.

█ In reviewing this evidence, there is basically a two part test that Appellant's evidence must meet. First, Appellant must have removed the case from the realm of conjecture. *Bridgeforth*, 490 S.W.2d at 422, 423. Second, when the evidence is circumstantial or when the defendant timely raises

the issue, a plaintiff must exclude "equally valid" theories of nonliability, but not **all** reasonable or "competing" theories of nonliability. *Sparks v. Platte–Clay Elec. Coop.,* 861 S.W.2d 604, 608 (Mo.App.1993). In *Sparks,* shortly after the defendant electric company made repairs on the electrical meter box in the plaintiffs' home, the plaintiffs experienced multiple electrical problems. The plaintiffs called the electric company but no repair person was sent to look at the meter box. Subsequently, an electrical fire started in the plaintiffs' meter box, totally destroying plaintiffs' home. The court held that the case ultimately came down to a decision about the credibility and believability of the witnesses, stating that it is the jury's duty to judge the credibility of the witnesses and to determine the weight and value that is to be given their testimony. *Id.*

The Appellant here has put forth enough identification testimony and evidence to meet the above two-part test, removing the issue from the realm of rank conjecture and surmise. In addition, Appellant has put forth evidence to combat at least some of Respondent's equally valid theories of liability as mandated by this court in *Sparks,* 861 S.W.2d at 608.

Reasonable people could believe different things from listening to the evidence put forth by Appellant as well as that from Respondent. As in *Sparks,* 861 S.W.2d at 608, this case comes down to a decision by the jury as to credibility, the plaintiff having made a submissible case.

The judgment is reversed and the case remanded for a new trial.

All concur.